UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                            :
**In re:**                                                  :   **Chapter 11**
                                                            :
**2300 XTRA Wholesalers, Inc. et al.**[1]                   :   **Case No. 10-12280 (ALG)**
                                                            :
                                                            :   **Jointly Administered**
                              **Debtors**                   :
                                                            :
------------------------------------------------------------x

**AMENDED NOTICE OF MOTION BY CONDAL DISTRIBUTORS INC. AND CONDAL IMPORTS INC. FOR DETERMINATION THAT UNDER SECTION 362(B)(10) OF THE BANKRUPTCY CODE THE AUTOMATIC STAY DOES NOT APPLY, THAT UNDER SECTION 541(B)(2) OF THE BANKRUPTCY CODE PROPERTY OF THE ESTATE DOES NOT INCLUDE ANY INTEREST OF THE DEBTORS IN THE LEASE AT ISSUE OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE**

**PLEASE TAKE NOTICE** that, upon the annexed motion Condal Distributors Inc. and Condal Imports Inc. (collectively, the "Owner") has moved for the entry of an order determining that pursuant to Section 362(b)(10) of the Bankruptcy Code the automatic stay does not apply, that under Section 541(b)(2) of the Bankruptcy Code property of the estates do not include any interest of the Debtors in the real property lease between the Owner and the Debtor, 2300 XTRA Wholesalers, Inc. dated April 1992 (the "Lease") for the premises located at 2300 Randall Avenue, Bronx, New York (the "Premises") and the Premises at issue or, in the alternative, pursuant to Sections 362 (d)(1) and (2) of the Bankruptcy Code modifying the automatic stay to permit the Owner to exercise its state law remedies with respect to the Lease, the Premises, the Debtors and their affiliates.

---

[1]     The Debtors are 2300 XTRA Wholesalers, Inc. and Randall Meat Market, Inc.

1

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider Owner's motion will be held before the Honorable Allan L. Gropper, United States Bankruptcy Judge, in Courtroom No. 617 of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, on June 30, 2010 at 9:30 a.m. (ET).

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Owner's motion must be in writing, conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"); must be filed with the Bankruptcy Court electronically by registered users of the Bankruptcy Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties in interest, on a 3.5 inch disk, in text-searchable Portable Document Format (PDF), Wordperfect or any other Windows-based word processing format (in either case, with a hard-copy delivered directly to Chambers), and must be served upon (i) attorney for Owner, Joseph A. Altman, P.C., 1009 East 163rd Street, Bronx, New York 10459 (Attention: Joseph A. Altman) and (ii) the parties in interest who have requested notice pursuant to Bankruptcy Rule 2002 and the Local Rules, so as to be actually received no later than June 23, 2010 at 4:00 p.m. (ET). Only those responses that are timely filed, served and received will be considered at the Hearing.

  Failure to file a timely objection may result in entry of an order granting Owner's motion.

Dated:  June  10, 2010        **Joseph A. Altman, P.C.**
Bronx, New York

            By: <u>s/s Joseph A. Altman, Esq.</u>
             Joseph A. Altman
             951 Bruckner Blvd., 1st Floor
             Bronx, New York 10459
             Phone:  718-328-0422

             Counsel for Condal Distributors Inc. and Condal
             Imports Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
:
In re:                                                          :    Chapter 11
:
2300 XTRA Wholesalers, Inc. et al.[2]                           :    Case No. 10-12280 (ALG)
:
:    Jointly Administered
Debtors                                                         :
:
----------------------------------------------------------------x

**AMENDED MOTION BY CONDAL DISTRIBUTORS INC. AND CONDAL IMPORTS INC. FOR DETERMINATION THAT UNDER SECTION 362(B)(10) OF THE BANKRUPTCY CODE THE AUTOMATIC STAY DOES NOT APPLY, THAT UNDER SECTION 541(B)(2) OF THE BANKRUPTCY CODE PROPERTY OF THE ESTATES DOES NOT INCLUDE ANY INTEREST OF THE DEBTORS IN THE LEASE AT ISSUE OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE**

TO THE HONORABLE ALLAN L. GROPPER,
UNITED STATES BANKRUPTCY JUDGE:

Condal Distributors Inc. and Condal Imports Inc. (collectively, the "Owner") hereby move for the entry of an order determining that pursuant to Section 362(b)(10) of the Bankruptcy Code the automatic stay does not apply, that under Section 541(b)(2) of the Bankruptcy Code property of the estate does not include any interest of the Debtors in the Lease (defined below) or the Premises (defined below) at issue or, in the alternative, pursuant to Sections 362 (d)(1) and (2) of the Bankruptcy Code modifying the automatic stay to permit the Owner to exercise its state law remedies with respect to the Lease, the Premises, the Debtors and their affiliates. In support thereof, the Owner respectfully represents as follows:

---

[2]    The Debtors are 2300 XTRA Wholesalers, Inc. and Randall Meat Market, Inc.

1

**Preliminary Statement**

1) The Owner is the owner of the premises located at 2300 Randall Avenue, Bronx, New York (the "Premises"). The Premises are a single story commercial building with no residential units. The Debtors have no operations, are not in possession of the Premises, the Premises are vacant and any landlord-tenant relationship between the Owner and the Debtors terminated on September 10, 2009 prior to the Petition Date (defined below). On April 26, 2010, after trial on the merits, a final judgment of possession was issued in favor of the Owner mandating the forthwith issuance of a warrant of eviction and no notice of appeal has been filed. *See* Exhibit A, Judgment of Possession in favor of Owner and underlying Holdover Petition filed against the Debtor.

**Jurisdiction**

2) The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b). The statutory predicate for relief are sections 362(b)(10), 362(d) and 541(b)(2) of the Bankruptcy Code.

**Factual Background**

3) The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 29, 2010 (the "Petition Date").

4) The Owner and the Debtor, 2300 XTRA Wholesalers, Inc. entered into a real property lease (the "Lease") for the Premises in April 1992. Randall Meat Market, Inc. is not a tenant under the Lease. However, in the abundance of caution it was named as a defendant in the underlying New York court proceedings. During February 2008, the Debtor, 2300 XTRA Wholesalers, Inc., in violation of the Lease, attempted to sublet and/or assign the Lease to OJ Resources, Inc. ("OJ Resources"). When the Owner objected to the purported unauthorized

2

subletting and/or assignment to OJ Resources, the Debtors commenced a New York State Court proceeding against the Owner titled *2300 XTRA Wholesalers, Inc. et al. v. Condal Distributors Inc. et al.*, Index No. 0302174/2009 (N.Y. Sup. Bronx County) (the "Proceeding I") seeking a declaration that the Lease could be sublet and/or assigned to OJ Resources without complying with the applicable provisions of the Lease. The Supreme Court of the State New York - County of Bronx ("New York Supreme Court"), on two occasions, denied the Debtors' applications seeking a declaration that the Lease could be sublet and/or assigned to OJ Resources. *See* Exhibit B Orders of the New York Supreme Court. Among other things, the New York Supreme Court ruled in favor of the Owner because the plaintiff was unable to demonstrate adequate assurance of future performance and also failed to provide OJ Resources' financials.

5) Notwithstanding, in breach of the Lease and in violation of the New York Supreme Court's orders, the possession and management of the Premises was turned over to OJ Resources pursuant to the terms of a Management Agreement (the "Management Agreement") made and entered as of March 14, 2008. A copy of the Management Agreement is annexed hereto as Exhibit C. In addition to turning over possession and management of the Premises to OJ Resources, the lessee also defaulted under various other terms and provisions of the Lease. In connection therewith, on May 23, 2008, the Owner, in compliance with the Lease and applicable law, served a "Five Day Notice of Default", which outlined the numerous monetary and non-monetary defaults under the Lease (the "First Termination Notice"). A copy of the First Termination Notice is annexed hereto as Exhibit D. In response to the First Termination Notice, on or about May 31, 2008, the Debtor commenced a "Yellowstone proceeding" against the Owner in New York Supreme Court (the "Proceeding II").

6)   On February 24, 2009, the parties entered into a settlement agreement in Proceeding II (the "Proceeding II Settlement").  The Proceeding II Settlement became part of the Lease and, among other things, it required the Debtor, 2300 XTRA Wholesalers, Inc. to:  (a) evict OJ Resources from the Premises; (b) obtain a certificate of occupancy for the intended use of the Premises; (c) repair and maintain the roof of the Premises; (d) pay rent when due and (e) cure other defaults under the Lease.  In addition, as part of the Proceeding II Settlement, the Debtor agreed to discontinue Proceeding I with prejudice.  A copy of the Proceeding II Settlement is annexed hereto as Exhibit E.

7)   Subsequent to the execution of the Proceeding II Settlement, OJ Resources was evicted from the Premises; however, the Debtor, 2300 XTRA Wholesalers, Inc. defaulted under the terms of the Lease (and Proceeding II Settlement), including failing to pay rent when due.  In connection with these monetary and non-monetary defaults, on August 12, 2009, the Owner, in compliance with the Lease and applicable law, served a "Ten Day Notice of Termination" (the "Second Termination Notice"), which outlined the various defaults under the Lease (and the Proceeding II Settlement).  A copy of the Second Termination Notice is annexed hereto as Exhibit E.

8)   In accordance with the terms of the Second Termination Notice, the Lease terminated on September 10, 2009.  The Debtor, 2300 XTRA Wholesalers, Inc., while not in physical possession, refused to vacate the Premises and on September 11, 2009, the Owner was forced to commence a Holdover Proceeding against the Debtors.  *See* Exhibit A.  The Debtors filed an answer and after trial on the merits, on April 26, 2010, a final judgment of possession was issued in favor of the Owner mandating the forthwith issuance of a warrant of eviction and

4

imposing monetary damages in favor of the Owner in the sum of not less $238,329.00. *See* Exhibit A.

9) In the Affidavit of Pedro Bello dated April 29, 2010, the Debtor, 2300 XTRA Wholesalers, Inc.'s Comptroller that accompanies the Debtor, 2300 XTRA Wholesalers, Inc.'s chapter 11 petition [D.I. No. 1] (the "Bello Affidavit"), the Debtors do not dispute that they violated the terms of the Lease and is not in possession of the Premises. *See* Bello Affidavit ¶ 9. In addition, the Debtors do not dispute that the judgment of possession was entered after trial. *See* Bello Affidavit ¶ 11.

10) Additionally, the Bello Affidavit also admits that OJ Resources, the purported purchaser of the Debtors' business and interest in the Lease, failed to make payments required to be made by it under the Management Agreement, which is nothing more than a disguised attempt to convey the Debtors' business and interest in the Lease to OJ Resources. *See* Bello Affidavit ¶ 7.

**Argument**

*The automatic stay does not apply and Lease is not property of the Debtor's estate*

11) The language of 11 U.S.C. § 362(a)(10) clearly indicates that the automatic stay does not apply when the debtor is operating under a lease of non-residential real property that has terminated. *See In re Policy Realty Corp.*, 242 B.R. 121, 129 (S.D.N.Y. 1999). In addition, for purposes of §§ 362(a)(10) and 541(b)(2), a lease can be deemed terminated prior to the expiration of its stated term when the landlord has terminated the lease by notice and in such event the automatic stay does not apply. *See* Id. at 128 (holding that "the phrase 'stated term' includes in its scope leases that have been terminated as a result of acceleration due to defaults" and that under New York law, when "the landlord sends the tenant in default a notice of

5

termination of the lease, stating that the lease will be deemed terminated upon a specific date due to tenant's default[,] [t]he lease is terminated when the time [set forth in such notice] expires … .") (internal citations and quotation marks omitted); *In re Lady Liberty Tavern Corp.*, 94 B.R. 812, 816 (S.D.N.Y. 1988) ("the state court's .. judgment of possession … is entitled to preclusive effect"); *In re Cohoes Industrial Terminal, Inc.*, 70 B.R. 214, 219 (S.D.N.Y. 1987), *aff'd without opinion*, 831 F.2d 283 (2d. Cir. 1987) ("an order of the [state] court extinguishing the tenant's right to possession terminates the landlord-tenant relationship, regardless of the tenant's continued unauthorized possession of the premises.") (internal citations omitted).

12)     Here, the Second Termination Notice is dated August 12, 2009 and expressly provided that the Lease would terminate on September 10, 2009. The Debtors did not take any action in response to this Second Termination Notice. In addition, the Holdover Proceeding against the Debtors (and others) was commenced on September 11, 2009 and a judgment of possession was issued on April 26, 2010. Additionally, the Premises are vacant. Accordingly, the Lease terminated on and as of September 10, 2009. *See In re Cohoes Industrial Terminal, Inc.*, 70 B.R. at 220 (holding that tenant's interest in property was entirely extinguished and landlord-tenant relationship terminated upon the expiration of the stated termination date in the notice of termination, in each case, regardless of continued possession). Therefore, the Debtors cannot now claim any right, title or interest in and to the Lease and the Premises and by operation of § 362(a)(10) the automatic stay does not apply. *See* 3 Collier's on Bankruptcy ¶ 362.05[10] (15th rev. ed. 2008) ("Leases completely terminated prepetition should not be considered property of the estate because the debtor retains no legal or equitable interest after termination … ."); *In re Policy Realty Corp.*, 242 B.R. 127 ("[a] bankruptcy court may not exercise its equitable powers to create substantive rights that do not exist… [and] § 541(b)(2)

6

specifically excludes form th[e] estate:  any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under … title [11]"); *In re Lady Liberty Tavern Corp.*, 94 B.R. at 814 ("a state court default judgment terminating the [d]ebtor's leasehold interest .. had preclusive effect in the bankruptcy court") (internal citations omitted).  Here, in addition to the Lease termination as of September 10, 2009, the April 26, 2010 judgment of possession terminating the Debtors' leasehold interest (although Randall Meat Market, Inc never had any leasehold interest in the Lease or the Premises) was rendered after trial and on merits; accordingly, the Debtors cannot now assert any interest in the Premises or the Lease. *See* 11 U.S.C. §§ 362(b)(10) and 541(b)(2).

*Grounds for relief from the Automatic Stay*

13)    Assuming *arguendo* the automatic stay applies, cause exists to vacate it to permit the Owner to exercise its state court remedies.

### *Cause exists under Section 362(d)(1) to lift stay*

14)    It cannot be disputed that the Lease terminated prior to the Petition Date and the Debtors have no interest in either the Lease or the Premises.  Generally speaking, affirmative harm to the movant from the continuance of the automatic stay constitutes grounds for relief from the stay. *In re Boodrow,* 192 B.R. 57, 60 (Bankr. N.D.N.Y. 1995); *see also*, *In re Rocchio*, 125 B.R. 345 (Bankr. R.I. 1991) (finding debtors' failure to pay post-petition rent and an absence of evidence of debtors' attempt to cure the default, provide adequate protection or offer adequate assurance of future performance as "cause" per § 362(d)(1) to lift the automatic stay); *see also*, *In re Taylor*, 1997 WL 642559 at * 1 (S.D.N.Y. Oct. 16, 1997) ( failure to pay post-petition rent is grounds to lift stay).  Alternatively, the automatic stay under § 362(d)(1) should be lifted

7

because the Debtors filed their chapter 11 petition in bad faith and to frustrate the Owner's efforts to exercise state court remedies with respect to a Lease that terminated prior to the Petition Date. *See, In re RAD Properties, Inc.*, 84. B.R. 827, 829 (Bankr. M.D. Fla. 1988) (holding that a bad faith filing is "cause" for relief from the automatic stay); *In re Panache Development Co., Inc.*, 123 B.R. 929, 932 (Bankr. S.D. Fla. 1991) ("The bankruptcy laws were simply not intended to be used as a sword by the rapacious.")

15) Here, under the terms of the Lease, the lessee is required to pay, among other sums, base rent at the rate of $26,481 per month payable on the first day of each month. In addition, among other things, the Debtors are required to obtain a "certificate of occupancy" for the premises, replace the roof at the Premises, retain a structural engineer to certify that there are no structural damages to the Premises.

16) The Debtor, 2300 XTRA Wholesalers, Inc.'s chapter 11 proceeding was commenced on April 29, 2010 and base monthly rent for May 2010 and June 2010 in the sum of $52,962 is now due.[3] In addition, there are substantial other obligations that impact upon health and safety that must be and have not been performed by the Debtors. Moreover, in the Bello Affidavit, the Debtors admit that they are non-operational and their only intention is to sell their "supermarket" business. *See* Bello Affidavit ¶¶ 13 - 14. While it is unclear what value, if any, the Debtors can derive from the sale of a non-operational "supermarket" business, it cannot be disputed that the Debtors have no interest in the Lease and the Premises and they are not property of the Debtors' estates and cannot be sold by them.

17) Accordingly, cause exists to lift the automatic stay, where the Debtor, 2300 XTRA Wholesalers, Inc. is in default under the terms of the Lease (which has been terminated

---

[3] A check for $26,481 was received on May 22, 2010 - more than three weeks after rent is otherwise due under the terms of the Lease (that has been terminated prior to the Petition Date).

8

prior to the Petition Date), Randall Meat Market, Inc. is not a tenant under the Lease and never had any interest therein, the Debtors are not in physical possession of the Premises, owe the Owner hundreds of thousands of dollars and such claims continue to grow each day, the Debtors do not intend to operate any business and the sole purpose for filing the chapter 11 petitions after the termination of the Lease is to frustrate the Owner's exercise of its state court remedies.

*Relief under Section 362(d)(2) to lift stay*

18)    Section 362(d)(2) of the Bankruptcy Code provides that a court "shall" grant relief from the automatic stay "with respect to an act against property under subsection (a) of this section, if - (A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. §362(d)(2). If the foregoing two conditions are satisfied, relief from the stay "is mandatory, not permissive." *In re Zeoli*, 249 B.R. 61, 63 (Bankr. S.D.N.Y. 2000) ("Congress has provided that 'the Court shall grant relief from the stay' for any of the reasons stated in the three subsections [of § 362(d)]."). *See also In re Worldcom, Inc.*, 2003 WL 22025051 (Bankr. S.D.N.Y. 2003); *In re Elmira Litho, Inc.*, 174 B.R. 892, 900 (Bankr. S.D.N.Y. 1994); *In re Touloumis*, 170 B.R. 825, 827 (Bankr. S.D.N.Y. 1994); *In re de Kleinman*, 156 B.R. 131, 136 (Bankr. S.D.N.Y. 1993); *In re Diplomat Electronics Corp.*, 82 B.R. 688, 692 (Bankr. S.D.N.Y. 1988).

19)    While it is unclear whether the Debtors or any alleged tenant can ever have any "equity" in the real property that is subject to a lease (more importantly in situations such as this where the Lease terminated prior to the Petition Date), the Owner submits that the Debtors have no "equity" in the Lease or the Premises.

20)    Bankruptcy Code section 362(g) allocates the burden of proof in relief from stay matters to: (1) the party requesting relief on the issue of the debtor's equity in the property; and

9

(2) the party opposing such relief on all other issues. 11 U.S.C. § 362(g). Here, the Owner is required to prove the Debtors have no equity in the property, but then the burden shifts to the Debtors to prove that such property is necessary to an effective reorganization. *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988) (internal quotations and citation omitted).

21)     With respect to the first prong of section 362(d)(2), the Lease terminated prior to the Petition Date and the Debtors have no interest therein. In addition, while the Debtors allege without support that the value of their "business" and the Lease (that terminated prior to the Petition Date) is $4,500,000, OJ Resource the party with whom one or more of the Debtors contracted to sell the "business" and the Lease (that terminated prior to the Petition Date) at the height of the real estate boom in New York, defaulted immediately upon obtaining possession of the Premises on or prior to March 2008.

22)     With respect to the second prong of section 362(d)(2), the burden of proof is on the Debtors. *See* 11 U.S.C. § 362(d)(2)(B); 11 U.S.C. § 362(g)(2). The Owner submits that the Debtors cannot satisfy this burden because they have no prospect whatsoever of reorganization, are non-operational and never had and do not have any interest in the Premises other than a now terminated landlord-tenant relationship between the Owner and 2300 XTRA Wholesalers, Inc. The Debtors must also prove that the "property is essential for an effective reorganization *that is in prospect*", meaning that there is "a reasonable possibility of a successful reorganization within a reasonable time." *Timbers of Inwood Forest,* 484 U.S. at 376 (emphasis in original). Here, the Debtors have already conceded that they have no operations and no business. In addition, they have no interest in the Lease and the Premises.

23) As a result of any one of the foregoing, the Owner is entitled to relief from the automatic stay under 11 U.S.C. § 362(d) to proceed with its state court remedies.

**WHEREFORE**, the Owner respectfully requests the entry of an order determining that pursuant to Section 362(b)(10) of the Bankruptcy Code the automatic stay does not apply, that under Section 541(b)(2) of the Bankruptcy Code property of the estates do not include any interest of the Debtors in the Lease or the Premises at issue or , in the alternative, pursuant to Sections 362 (d)(1) and (2) modifying the automatic stay to permit the Owner to exercise its state law remedies with respect to the Premises and the Debtors and their affiliates and granting such other and further relief as this Court deems just and appropriate.

Dated: June  10, 2010                     **Joseph A. Altman, P.C.**
Bronx, New York

                                                             By: s/s Joseph A. Altman, Esq.
                                                               Joseph A. Altman
                                                               951 Bruckner Blvd., 1st Floor
                                                               Bronx, New York 10459
                                                               Phone: 718-328-0422

                                                               Counsel for Condal Distributors Inc. and Condal
                                                               Imports Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x
                                        :
In re:                                  :   Chapter 11
                                        :
2300 XTRA Wholesalers, Inc. et al.[4]   :   Case No. 10-12280 (ALG)
                                        :
                                        :   Jointly Administered
                    Debtors             :
                                        :   ORDER
----------------------------------------x

**ORDER ON AMENDED MOTION BY CONDAL DISTRIBUTORS INC. AND CONDAL IMPORTS INC. FOR DETERMINATION THAT UNDER SECTION 362(B)(10) OF THE BANKRUPTCY CODE THE AUTOMATIC STAY DOES NOT APPLY, THAT UNDER SECTION 541(B)(2) OF THE BANKRUPTCY CODE PROPERTY OF THE ESTATES DOES NOT INCLUDE ANY INTEREST OF THE DEBTORS IN THE LEASE AT ISSUE OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE**

Upon the motion (the "Motion")[5] of Condal Distributors Inc. and Condal Imports Inc. (collectively, the "Owner"), for the entry of an order determining that pursuant to Section 362(b)(10) of the Bankruptcy Code the automatic stay does not apply, that under Section 541(b)(2) of the Bankruptcy Code property of the estates does not include any interest of the Debtors in the Lease or the Premises at issue or, in the alternative, pursuant to Sections 362 (d)(1) and (2) of the Bankruptcy Code modifying the automatic stay to permit the Owner to exercise its state law remedies with respect to the Lease, the Premises, the Debtors and their affiliates; it appearing that cause exists to grant the relief requested in the Motion; it appearing that the Owner has demonstrated compelling circumstances; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to

---

[4]   The Debtors are 2300 XTRA Wholesalers, Inc. and Randall Meat Market, Inc.

[5]   Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

12

28 U.S.C. § 157(b); venue being proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that:

1. The Motion is GRANTED.

2. The Lease terminated prior to the Petition Date.

3. The Debtors have no interest in the Lease and the Premises.

4. Pursuant to Section 362(b)(10) of the Bankruptcy Code the automatic stay does not apply to the Owner's exercise of its remedies with respect to the Lease and the Premises.

5. Pursuant to Section 541(b)(2) of the Bankruptcy Code property of the Debtors' estates does not include the Lease and the Premises.

6. Pursuant to Sections 362 (d)(1) and (2) of the Bankruptcy Code the automatic stay is hereby lifted to permit the Owner to exercise its state law remedies with respect to the Lease and the Premises.

7. This Court shall retain jurisdiction to hear and determine all matters arising from or relating to this Order.

New York, New York
Dated: _____, 2010

                                        United States Bankruptcy Judge