| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------x | Hearing Date: June 30, 2010<br>at 9:30 a.m. |
| In re: | Chapter 11 |
| 2300 XTRA WHOLESALERS, INC., et al. | Case No. 10-12280 (ALG) |
| Debtors.<br>------------------------------------------------------------x | Jointly Administered |

## OPPOSITION TO AMENDED MOTION BY CONDAL DISTRIBUTORS INC. AND CONDAL IMPORTS INC. FOR AN ORDER TERMINATING THE AUTOMATIC STAY AND RELATED RELIEF

**TO THE HONORABLE ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

2300 XTRA Wholesalers, Inc. and its affiliated Debtor, Randall Meat Market, Inc. (jointly, the "Debtors") as and for their opposition to the Amended Motion for relief from the Automatic Stay, filed by Condal Distributors Inc. and Condal Imports Inc. (jointly, the Landlord") respectfully allege and show this court as follows:

### PRELIMINARY STATEMENT

1. The Debtors submit this opposition to a motion brought by the Landlord seeking to terminate a multimillion dollar lease and business, the sale of which has to date, been single handedly thwarted by this Landlord.

2. Predicated upon an earlier offer which unfortunately did not close, the Debtors submit that the sale of the leasehold interest and the related supermarket business will generate sufficient funds to pay and cure all arrears owed to the Landlord, and to pay unsecured creditors 100% of their valid allowed claims, with more than One

Million Dollars remaining for the Debtors' equity holder from the surplus proceeds of the sale.

3. Contrary to the Landlord's contention, prior to the commencement of this case, a warrant of eviction was <u>not</u> issued and as such, the Debtors' interest in the leasehold was not finally terminated. As such, as a matter of law and as a matter of equity, this Court should allow the reorganization process to unfold and give the Debtors sufficient time to sell their business and to formulate a reorganization plan based upon the sale of the leasehold and other supermarket assets.

## BACKGROUND FACTS

4. On April 29, 2010, the Debtor 2300 XTRA Wholesalers, Inc. (hereafter referred to as "2300 XTRA") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. 2300 XTRA Wholesalers, Inc. is an entity which was established, among other things, to hold the lease for the supermarket at 2300 Randall Avenue, Bronx, New York (the "Property"), as will be hereafter set forth. The Debtor, Randall Meat Market, Inc. (hereafter referred to as "Randall Meat") was established for the purpose of operating the supermarket at 2300 Randall Avenue, Bronx, New York. Randall Meat filed its Chapter 11 case on May 28, 2010. An order was entered by this Court on June 3, 2010, consolidating the cases for procedural purposes.

5. In April 1992, 2300 XTRA entered into a 30 year lease with the Landlord to operate a 35,079 square foot supermarket and dry food product warehouse facility at 2300 Randall Avenue, Bronx, New York. For the Court's ready reference, a copy of the lease is annexed hereto and made a part hereof as <u>Exhibit</u> "A".

2

6. From 1992 through 2007, the landlord/tenant relationship was completely amicable and without any litigation, notices of default or difficulties of any kind or nature. During this time, rent was always paid to the Landlord, even though this was not always easy to do. For example, the premises are located in an area which was, plagued by multiple robberies, including an aggregate of more than $300,000.00 stolen from the Debtors in two separate incidents. In 1997, there was a long, bitter dispute with a union trying to organize workers at the store and the store was closed for an entire year. Nonetheless, throughout these difficulties, all rent and charges were paid to the Landlord.

7. All of this changed on or about February 15, 2008 when the Debtors notified the Landlord that they entered into a written agreement to sell the supermarket business to an entity known as O.J. Resources, Inc. (hereinafter referred to as "O.J.") for the sum of $4,500,000.00 plus inventory. In accordance with the terms of the lease, on February 15, 2008, a letter was sent to the Landlord requesting the Landlord's consent to the sale. For the court's ready reference, annexed hereto as Exhibit "B", is a copy of the February 15, 2008 correspondence to the Landlord with the enclosures. Annexed hereto as Exhibit "C" is a copy of the underlying contract of sale dated February 7, 2008. The Debtors' request for the Landlord's consent to the sale was met with a letter dated February 25, 2008 requesting additional information which was coupled by a response by the Debtors' counsel dated March 7, 2008. Copies of the correspondence dated February 25, 2008 and March 7, 2008 are collectively annexed hereto as Exhibit "D".

8. The prospective purchaser, O.J. requested that it be allowed to manage the business obtaining the landlord's consent to the sale or obtaining a court

3

order allowing the sale to take place. Accordingly, on March 14, 2008, a management agreement was made between the Debtors and O.J. which would enable O.J. to manage the business on the Debtors' behalf pending a closing. For the court's ready reference, a copy of the management agreement is annexed hereto and made a part hereof as <u>Exhibit "E"</u>.

9.   The Debtors would be remiss if they did not point out and emphasize to the Court that as part of the proposal to the Landlord, the Debtor offered to post additional security of $174,492.00 for a period of five years after closing, which when added to the existing security of $46,164.00, would provide the Landlord with security equal to a full year's base rent under the lease.

10.   As these events were unfolding, it became clear that the Landlord had another agenda rather than moving forward in good faith to allow the sale of the business. Accordingly, an action was brought in the Supreme Court, Bronx County, for declaratory relief to authorize the sale. The action was entitled <u>2300 XTRA Wholesalers, Inc. and Randall Meat Market, Inc. against Condal Distributors Inc. and Condal Imports Inc.</u> (Supreme Court, Bronx County, Index No. 302174/08). On May 14, 2008, the Honorable Maryanne Briganti Hughes entered an order which denied the Debtors' motion without prejudice on the grounds that the Landlord was to be furnished with current financial information and the source of funds to be used to purchase the business. A copy of the Supreme Court order is annexed hereto and made a part hereof as <u>Exhibit "F"</u>.

11. While the declaratory judgment action was pending, the Landlord then gave the tenant a notice of default under the lease which then caused the tenant to commence a "so-called" Yellowstone Action to preserve the lease. The Yellowstone Action was entitled <u>2300 XTRA Wholesalers, Inc. and Randall Meat Market, Inc. against Condal Distributors Inc. and Condal Imports Inc.</u> and was assigned Index 304489/08. After trial began in the Yellowstone Action, a stipulation of settlement was reached by the parties. That stipulation of settlement is dated February 24, 2009, a copy of which is annexed hereto and made a part hereof as <u>Exhibit</u> "G".

12. During the course of the Yellowstone litigation, the Debtors learned that during the life of the lease they overpaid the Landlord hundreds of thousands of dollars of rent in the form of real estate taxes which were supposed to be abated under the lease. As part of the stipulation resolving the Yellowstone litigation, in the hope of making peace with the Landlord, the Debtors waived their claims for reimbursement of those amounts.

13. In the meantime, O.J. defaulted under the management agreement in countless ways by, *inter alia,* failing to pay or to provide the funds needed to pay claims of vendors, utility companies, for business insurance and rent owed under the lease. The Debtors gave notice to O.J. that the Debtors terminated the management agreement. When O.J. refused to surrender possession of the premises to the Debtors, an ejectment proceeding was brought in the Civil Court, Bronx County, which action was highly contested by O.J.

14. Ultimately, the Debtors finalized their actions to have the marshal execute upon a warrant of eviction against O.J. After over a year and a half's litigation with O.J., the eviction process was concluded on April 22, 2010 when the City Marshal changed the locks to the premises and gave possession of the Property back to the Debtors.

15. During this process, the Landlord was fully cognizant of the fact that the Debtors had placed O.J. in default of the management agreement and were in the process of taking steps to evict O.J. and regain possession of the Property.

16. Despite knowing that the Debtors were not in possession of the Property, the Landlord served notices of default and notice of lease termination at the Property. Thereafter, still without providing actual notice to the Debtors, the Landlord brought a holdover eviction proceeding and obtained a judgment of default against the Debtors.

17. The Debtors obtained an order to show cause to vacate the default. The order to show cause was vehemently opposed by the Landlord. A decision and order was entered by the Civil Court vacating the default judgment and providing that the matter be brought for trial on April 26, 2010 in the Civil Court, Bronx County. Despite the Debtors' request that the matter be adjourned, based upon possession of the premises having only been returned to the Debtors only four days before and the Debtor's willingness to make payments to the Landlord, a trial was conducted on April 26, 2010, at which time the court directed that possession be given back to the landlord. A monetary judgment was issued <u>that day</u> and is annexed hereto as <u>Exhibit</u> "H".

6

18. Although the Landlord was awarded possession, the landlord has neither obtained a warrant of eviction nor taken the steps which are required to finalize the eviction process under New York law.

19. The Debtors' Chapter 11 cases were filed on an emergency basis to preserve the value of the executory lease agreement.

## LEGAL ARGUMENT

20. The Landlord seeks to vacate the automatic stay so that is can proceed with its eviction, and take possession of the Property.

21. It is black-letter law that it is the issuance of a warrant of eviction which terminates and annuls the relationship of landlord and tenant.

22. New York Real Property Actions and Proceedings Law §749(3) provides in relevant part as follows:

> The issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises, and annuls the relation of landlord and tenant, but nothing contained herein shall deprive the court of the power to vacate such warrant for good cause shown prior to the execution thereof.

23. The Landlord places much reliance upon In re Lady Liberty Tavern Corp., 94 B.R. 812 (S.D.N.Y. 1988). In that case, the District Court reversed the Bankruptcy Court, holding that the debtor's lease had been terminated prior to the bankruptcy, and was not subject to resuscitation for the purposes of assuming or assigning the lease. Id., at p. 813.

7

24. Similarly, the Landlord relies on <u>In re Cohoes Industrial Terminal Inc.</u>, 70 B.R. 214 (S.D.N.Y. 1986), which likewise holds that a terminated lease cannot be resurrected by the filing of a Chapter 11 petition.

25. However, the Landlord misses completely the crucial distinction between those cases and the instant case: here, the lease was not terminated prior to the filing of the petition.

26. In <u>Lady Liberty</u>, a warrant of eviction was issued terminating the lease and ending the landlord/tenant relationship under §749(1) of the New York Real Property Actions and Proceedings Law prior to the time the Chapter 11 case was filed. Similarly, in <u>Cohoes</u>, after a series of appeals, the New York State Court of Appeals had made entered a final order terminating the debtor's lease prior to bankruptcy. See generally, <u>3 Collier on Bankruptcy 15th Edition</u>, Par. 365.05[3].

27. In this case, although possession was awarded to the Landlord, the lease was not terminated as a matter of New York law. Thus, the facts in the instant case are analogous to those in <u>In re McCrory Corporation</u>, 1995 WL 71255 (S.D.N.Y. 1995), where, applying Texas law, the Court found that the lease had not been terminated prior to the filing, and thus was subject to being reinstated through an appeal, and was able to be assumed by the Chapter 11 debtor under Section 365 of the Bankruptcy Code. In light of the assumption rights, the Court denied the landlord's motion to vacate the stay. <u>See</u>, <u>In re Joker Ent., Inc.</u>, 1995 WL 626372 (Bankr. S.D.N.Y. 1995)(warrant of eviction stayed while debtor pursues action to vacate warrant, which action was removed from Civil Court to the U.S. District Court); <u>In re P.J.Clarke's Rest. Corp.</u>, 265 B.R. 392

8

(Bankr. S.D.N.Y. 2001)(stay will be maintained to afford debtor a chance to appeal where possession was granted but warrant of eviction was not issued, as the debtor retained an assumable interest in an unexpired lease should it prevail on the appeal); In re B.K.B. Ent. Inc., 97 B.R. 170 (Bankr. S.D.N.Y. 1989)(stay continued while debtor sought to vacate warrant of eviction through appeal); In re W.A.S. Food Service Corp., 49 B.R. 969 (Bankr. S.D.N.Y. 1985)(debtor retains residual interest in lease despite warrant of eviction because warrant can be vacated and lease restored). See also, In re Éclair Bakery Ltd., 255 B.R. 121, 132-137 (Bankr. S.D.N.Y. 2000).

28.  In our case, the warrant of eviction had not issued and the lease has not been terminated. The Debtors have both a possessory interest in the Property and residuary rights under the lease which can be assumed and assigned and which must be protected for the benefit of all creditors.

29.  The Landlord argues that the lease has no value, because the proposed sale fell through and the real estate market has changed since the offer was first made. However, this position lacks all creditability, as it is inconceivable that an asset worth $4,500,000.00 no longer has any value. Commercial supermarkets are regularly bought and sold in the New York City metropolitan area, even in this economic climate. Moreover, the below market value of this lease was a driving factor in the original $4,500,000.00 offer to purchase, and supports the likelihood that, given the opportunity to do so, the Debtors can identify a new buyer. In fact, it is probable that the value of the lease and supermarket are behind the Landlord's efforts to interfere with the original sale and actions to recover possession of the Property, as it wants to undertake to sell the

supermarket itself rather than be limited to the economic bargain as set forth within its lease agreement.

30. Finally, it should be noted that the Debtors are fully cognizant of their obligations under the Bankruptcy Code to provide adequate protection to the Landlord during the Chapter 11 case. To that end, the Debtors duly tendered to the Landlord rent for the months of May and June, 2010. However, those rent checks were returned by the Landlord by correspondence dated June 6, 2010 and June 9, 2010. Copies of the Landlord's correspondence and the underlying checks are collectively annexed hereto and made a part hereof as <u>Exhibit</u> "I".

31. The Debtors are prepared to deliver post-petition rent checks to the Landlord in payment of post-petition rent obligations in accordance with the provisions of §365 of the Bankruptcy Code, as soon as the Landlord will accept the payments.

WHEREFORE, the Debtors respectfully request that the Landlord's motion be denied in its entirety, and that the Debtors be granted such other and further relief as may be just and proper.

Dated: New York, New York
June 23, 2010

        GOLDBERG WEPRIN FINKEL
        GOLDSTEIN LLP
        Attorneys for Debtors
        1501 Broadway, 22nd Floor
        New York, New York 10036
        (212) 221-5700
        By: /s/ Neal M. Rosenbloom
           Neal M. Rosenbloom (NMR 5465)
           A Member of the Firm

H:\Dominique\word\CLIENTS\2300 XTRA WHOLESALERS, INC\Opposition to Amended Motion (6-22-10).doc