UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
**In re:** : **Chapter 11**
:
**2300 XTRA Wholesalers, Inc. et al.**[1] : **Case No. 10-12280 (ALG)**
:
: **Jointly Administered**
:
**Debtors** :
:
------------------------------------------------------------x

**REPLY OF CONDAL DISTRIBUTORS INC. AND CONDAL IMPORTS INC. TO THE
DEBTORS' OPPOSITION TO THE AMENDED MOTION FOR DETERMINATION
THAT UNDER SECTION 362(B)(10) OF THE BANKRUPTCY CODE THE
AUTOMATIC STAY DOES NOT APPLY, THAT UNDER SECTION 541(B)(2) OF THE
BANKRUPTCY CODE PROPERTY OF THE ESTATE DOES NOT INCLUDE ANY
INTEREST OF THE DEBTORS IN THE LEASE AT ISSUE OR, IN THE
ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO
SECTION 362(d) OF THE BANKRUPTCY CODE**

TO THE HONORABLE ALLAN L. GROPPER,
UNITED STATES BANKRUPTCY JUDGE:

Condal Distributors Inc. and Condal Imports Inc. (collectively, the "Owner") hereby submit this reply (the "Reply") to the above captioned debtors' (each a "Debtor" and collectively, the "Debtors") opposition (the "Opposition") to the Owner's motion (the "Motion")[2] for the entry of an order determining that pursuant to Section 362(b)(10) of the Bankruptcy Code the automatic stay does not apply, that under Section 541(b)(2) of the Bankruptcy Code property of the estate does not include any interest of the Debtors in the Lease or the Premises at issue or, in the alternative, pursuant to Sections 362 (d)(1) and (2) of the Bankruptcy Code modifying the automatic stay to permit the Owner to exercise its state law

---

[1] The Debtors are 2300 XTRA Wholesalers, Inc. and Randall Meat Market, Inc.

[2] Unless otherwise indicated, all capitalized terms shall have the meanings ascribed to them in the Motion.

remedies with respect to the Lease, the Premises, the Debtors and their affiliates. In support thereof, the Owner respectfully represents as follows:

1) In the Opposition, the Debtors admit and/or do not deny that:

(a) The Owner has been awarded possession by a judgment of possession issued on April 26, 2010 (the "Judgment of Possession") - after trial on the merits.

(b) The Judgment of Possession is a final order and no notice of appeal was filed by the Debtors.

(c) The Owner issued the Second Termination Notice.

(d) In accordance with the Second Termination Notice, the Lease terminated on September 10, 2009.

(e) The purported purchaser OJ Resources never performed its obligations and defaulted under the terms of the Management Agreement as soon as it was entered.

(f) There are substantial pre- and post-petition defaults under the Lease - which Lease terminated by its terms on September 10, 2009 and the Judgment of Possession was issued on April 26, 2010.

(g) The Debtors' have no operations.

(h) The Premises are vacant.

(i) There is no potential purchase for the Debtors' interest, if any, in the "Lease".

2) The Opposition is based upon the misguided belief that termination of the Debtors' interest in the Premises and the Lease required the issuance of a "warrant of eviction". This is because the Debtors are attempting to confuse the concepts of a "holdover" proceeding with a "non-payment" proceeding. In New York, a holdover proceeding is commenced where the relationship of landlord and tenant has been terminated prior to the commencement of the summary proceeding, either through the expiration of the lease term, or the termination of the lease based upon a tenant's default. That is what happened here on and as of September 10, 2009. However, the Debtors failed to turn over possession of the Premises to the Owner. As a result, the Owner commenced a "holdover" proceeding against the Debtors on September 11,

2

2009 and obtained the Judgment of Possession - - after trial on the merits. It may be true that in a "non-payment proceeding" situation, it is the issuance of a warrant of eviction for the removal of a tenant that cancels the lease agreement. *See*, New York Real Property Actions and Proceedings Law § 749(3). However, in a holdover case, there is no right for a commercial tenant to cure a default, after the lease has been terminated by the landlord. *See e.g., In re Policy Realty Corp.*, 242 B.R. 121, 128 (S.D.N.Y. 1999).

3) Since the Second Termination Notice was issued on August 12, 2009, in order to prevent the termination of the Lease and all of their interest in the Premises the Debtors were required to commence a "Yellowstone proceeding". The purpose of a Yellowstone injunction is to enable a tenant confronted with a notice to cure, notice of default or threat of termination of its lease to obtain a stay tolling the running of the cure period so that after the determination of the merits, the tenant has an opportunity to cure the default and avoid a forfeiture of the leasehold. *See e.g., Empire State Building Associates v. Trump Empire State Partners*, 245 A.D.2d 225, 667 N.Y.S.2d 31 (1st Dep't 1997) (The Yellowstone injunction is a preliminary injunction designed to preserve the status quo until the rights of the parties can be fully adjudicated, by enjoining the landlord from taking any action to terminate the lease during the pendency of the action.) Here while they commenced same in connection with the First Termination Notice issued on May 23, 2008 they did not do so when the Second Termination Notice.

4) Clearly the Lease terminated prior to the Petition Date and the Debtors are not operating at or in physical possession of the premises; accordingly, there is nothing for them to assume and assign. The Debtors also cite various cases in support of their misguided argument. Each case supports the Owner's argument.

- *In re Lady Liberty Tavern Corp.*, 94 B.R. 812, 816 (S.D.N.Y. 1988) ("the state court's ..[default] judgment of possession … is entitled to preclusive effect").

3

>The case stands for the simple proposition that a commercial lease can be terminated by the issuance of a notice of termination and a judgment of possession in a holdover situation affirms such termination - - and the issuance or non-issuance of a warrant of eviction is irrelevant in such situations.

- *In re Cohoes Industrial Terminal, Inc.*, 70 B.R. 214, 219 (S.D.N.Y. 1987), *aff'd without opinion*, 831 F.2d 283 (2d. Cir. 1987) ("an order of the [state] court extinguishing the tenant's right to possession terminates the landlord-tenant relationship, regardless of the tenant's continued unauthorized possession of the premises.") (internal citations omitted).

- *In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392, 395 (Bankr. S.D.N.Y. 2001). A non payment case where the tenant filed chapter 11 before judgment was entered. In *P.J. Clarke's*, it should also be noted that the tenant was attempting to appeal an order of the Civil Court and the bankruptcy court noted that "Civil Court decision .. may be equivalent to the issuance of a 'warrant of eviction'." *Id.* at 399 - 400. Here, unlike *P.J. Clarke's*, this is a holdover situation, a Judgment of Possession, which is also a final order, has been issued and there is no appeal.

- *In re McCrory Corporation*, 1995 WL 71255 (S.D.N.Y. Feb. 21, 1995). A non-payment proceeding, Texas (not New York) law applied and, in any event, the tenant was in actual physical possession of the premises and prior to the petition-date, the debtor had perfected its appeal of the underlying landlord-tenant court decision.

- *In re B.K.B. Ent., Inc.*, 97 B.R. 170 (Bankr. S.D.N.Y. 1989). The bankruptcy court order was entered in connection with an assumption (under § 365) and not a stay relief (under § 362) motion. There, the debtor remained in physical possession of the premises and continued to operate its business out of the premises and had appealed the underlying landlord-tenant court decision and the bankruptcy court held that the "only way for the debtor to sustain its rights to possession is through a successful appeal of the [landlord-tenant court's] decision". 97 B.R. at 172.

- *In re Joker Enterprises*, 1995 WL 626372 (Bankr. S.D.N.Y. Oct. 13, 1995). A non-payment proceeding in which the landlord and tenant had entered into a stipulation, the tenant continued in possession of the premises and a precondition to assumption was that the tenant would have to apply to the New York state court for an adjudication of its rights. *Id.* * 3.

- *In re Éclair Bakery Ltd.*, 255 B.R. 121 (Bankr. S.D.N.Y. 2000) (holding in dicta that warrant of eviction requirement for termination is in connection with non-payment proceedings).

- *In re W.A.S. Food Service Corp.*, 49 B.R. 969 (Bankr. S.D.N.Y. 1985). Trustee was required to seek adjudication of rights in New York state court.

4

4) Here the Debtors are attempting to use the protections afforded by § 362 as a sword and not as a shield. The Debtors are trying to create rights that otherwise do not exist. The Lease terminated on September 10, 2009; the Judgment of Possession was entered on April 26, 2010, is a final order and has not been appealed. Accordingly, the Debtors have no property or other interest in the Lease and the Premises.

5) The Debtors have also asserted that the only defaults under the Lease are non-payment of rent. That is not the case as there are substantial other defaults under the Lease as a result of which the Landlord was forced to send the Second Termination Notice and terminate the Lease on September 10, 2009. Many of these defaults are environmental issues and many others deal with health and safety concerns. The costs associated with such defaults are in excess of $1 million that must be expended by the Debtors to cure these breaches. Annexed hereto as <u>Exhibit A</u> is an engineering report of Heimer Engineering, P.C. (the "<u>Engineering Report</u>") that details, as of January 2009, the repair, maintenance, safety and other issues, including those requiring that the Premises be brought up to code. The costs of these repairs are estimated to exceed $1 million - - money that the Debtors do not have. Also attached as <u>Exhibit B</u> are notices from the Environmental Control Board of the City of New York, including two violation notices. Exhibit A and Exhibit B are clear and convincing evidence of the Debtors' disregard of their obligations under the now terminated Lease.

6) It is undisputed that the language of 11 U.S.C. § 362(a)(10) clearly indicates that the automatic stay does not apply when the debtor is operating under a lease of non-residential real property that has terminated. *See In re Policy Realty Corp.*, 242 B.R. 121, 129 (S.D.N.Y. 1999). In addition, for purposes of §§ 362(a)(10) and 541(b)(2), a lease can be deemed terminated prior to the expiration of its stated term when the landlord has terminated the lease by

5

notice and in such event the automatic stay does not apply. *See* Id. at 128 (holding that "the phrase 'stated term' includes in its scope leases that have been terminated as a result of acceleration due to defaults" and that under New York law, when "the landlord sends the tenant in default a notice of termination of the lease, stating that the lease will be deemed terminated upon a specific date due to tenant's default[,] [t]he lease is terminated when the time [set forth in such notice] expires … .") (internal citations and quotation marks omitted).

7) Here, the Lease terminated on September 10, 2009. The Debtors did not take any action in response to this Second Termination Notice. Therefore, the Debtors cannot now claim any right, title or interest in and to the Lease and the Premises and by operation of § 362(a)(10) the automatic stay does not apply.

8) In any event substantial cause exists to lift the automatic stay, specially where the Debtors are not in physical possession of the Premises, owe the Owner hundreds of thousands of dollars and such claims continue to grow each day, the Debtors do not intend to operate any business, the sole purpose for filing the chapter 11 petitions after the termination of the Lease is to frustrate the Owner's exercise of its state court remedies, and the Debtors have let the Premises in a state of disrepair and laden with environmental and other health and safety concerns.

9) More importantly, the Debtors have failed to meet their burden of proof with respect to the second prong of section 362(d)(2). *See* 11 U.S.C. § 362(d)(2)(B); 11 U.S.C. § 362(g)(2).

10 As a result, the Owner is entitled to the relief requested in the Motion.

**WHEREFORE**, the Owner respectfully requests the entry of an order determining that pursuant to Section 362(b)(10) of the Bankruptcy Code the automatic stay does not apply, that

6

under Section 541(b)(2) of the Bankruptcy Code property of the estates do not include any interest of the Debtors in the Lease or the Premises at issue or , in the alternative, pursuant to Sections 362 (d)(1) and (2) modifying the automatic stay to permit the Owner to exercise its state law remedies with respect to the Premises and the Debtors and their affiliates and granting such other and further relief as this Court deems just and appropriate.

Dated:  June 28, 2010        **Joseph A. Altman, P.C.**
Bronx, New York

By: *(signature)*
 Joseph A. Altman (4290)
 1009 East 163rd Street
 Bronx, New York 10459
 Phone:  718-328-0422

 Counsel for Condal Distributors Inc. and Condal Imports Inc.