UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| CONDAL DISTRIBUTORS, INC. and CONDAL IMPORTS | District Court |
| | Case No. 10-5021 |
| Petitioner (Landlord) | |
| -against- | |
| 2300 XTRA Wholesalers, Inc., | |
| Respondent (Tenant), | |
| -and- | |
| RANDALL MEAT MARKET, INC., O.J.RESOURCES, INC., "JOHN DOE," AND "JANE DOE" AND "XYZ CORP," | |
| Respondents (Undertenants) | |
| Debtors | |

------------------------------------------------------------x

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| 2300 XTRA Wholesalers, Inc. et al.[1] | Case No. 10-12280 (ALG) |
| | Jointly Administered |
| Debtors | |

------------------------------------------------------------x

**MOTION OF CONDAL DISTRIBUTORS INC. AND CONDAL IMPORTS INC. TO REMAND OR IN THE ALTERNATIVE MANDATORY ABSTENTION AND FOR ATTORNEY'S FEES PURSUANT TO 28 U.S.C. § 1447(C)**

Condal Distributors Inc. and Condal Imports Inc. (collectively, the "Owner") hereby moves for the entry of an order remanding the above captioned landlord-tenant proceeding (the

---

[1] The Debtors are 2300 XTRA Wholesalers, Inc. and Randall Meat Market, Inc.

"Landlord/Tenant Proceeding") in which, on April 26, 2010, the Civil Court of the City of New York, County of Bronx ("New York Civil Court") issued a final judgment of possession (the "Judgment of Possession") after trial on the merits - prior to the commencement of the instant chapter 11 cases or in the alternative for mandatory abstention and for attorney's fees pursuant to 28 U.S.C. § 1447(c). In support thereof, the Owner respectfully represents as follows:

## PRELIMINARY STATEMENT AND BACKGROUND

1) The Owner is the owner of the premises located at 2300 Randall Avenue, Bronx, New York (the "Premises"). The Premises are a single story commercial building with no residential units. The Debtors have no operations, are not in possession of the Premises, the Premises are vacant and any landlord-tenant relationship between the Owner and the Debtors terminated on September 10, 2009 prior to the Initial Petition Date (defined below). On April 26, 2010, after trial on the merits, the Judgment of Possession was issued in favor of the Owner mandating the forthwith issuance of a warrant of eviction and no notice of appeal has been filed.[2]

2) The Debtor, 2300 XTRA Wholesalers, Inc. filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on April 29, 2010 (the "Initial Petition Date") and the Debtor, Randall Meat Market, Inc. voluntary petition for relief under

---

[2] The language of 11 U.S.C. § 362(a)(10) clearly indicates that the automatic stay does not apply when the debtor is operating under a lease of non-residential real property that has terminated. *See In re Policy Realty Corp.*, 242 B.R. 121, 129 (S.D.N.Y. 1999). In addition, for purposes of §§ 362(a)(10) and 541(b)(2), a lease can be deemed terminated prior to the expiration of its stated term when the landlord has terminated the lease by notice and in such event the automatic stay does not apply. *See* Id. at 128 (holding that "the phrase 'stated term' includes in its scope leases that have been terminated as a result of acceleration due to defaults" and that under New York law, when "the landlord sends the tenant in default a notice of termination of the lease, stating that the lease will be deemed terminated upon a specific date due to tenant's default[,] [t]he lease is terminated when the time [set forth in such notice] expires ... .") (internal citations and quotation marks omitted); *In re Lady Liberty Tavern Corp.*, 94 B.R. 812, 816 (S.D.N.Y. 1988) ("the state court's .. judgment of possession ... is entitled to preclusive effect"); *In re Cohoes Industrial Terminal, Inc.*, 70 B.R. 214, 219 (S.D.N.Y. 1987), *aff'd without opinion*, 831 F.2d 283 (2d. Cir. 1987) ("an order of the [state] court extinguishing the tenant's right to possession terminates the landlord-tenant relationship, regardless of the tenant's continued unauthorized possession of the premises.") (internal citations omitted).

chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court on May 28, 2010. The Debtors have filed a Notice of Removal with the United States District Court for the Southern District of New York (the "District Court").

3)    For the reasons set forth below and under various papers and proceedings filed by the Owner in the Debtors' chapter 11 cases, each of which are incorporated herein by reference, the Owner asserts that the instant proceeding is non-core and the owner does not consent to final orders or judgment by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in connection with the Landlord/Tenant Proceeding. More importantly, it is unclear as to what is being removed to the Bankruptcy Court as there is already a final judgment that has been entered in the underlying Landlord/Tenant Proceeding and the chapter 11 filings are mere delay tactics.

4)    The Owner and the Debtor, 2300 XTRA Wholesalers, Inc. entered into a real property lease (the "Lease") for the Premises in April 1992. Randall Meat Market, Inc. is not a tenant under the Lease. However, in the abundance of caution it was named as a respondent in the underlying New York court proceedings. During February 2008, the Debtor, 2300 XTRA Wholesalers, Inc., in violation of the Lease, attempted to sublet and/or assign the Lease to OJ Resources, Inc. ("OJ Resources"). When the Owner objected to the purported unauthorized subletting and/or assignment to OJ Resources, in 2008, the Debtors commenced a New York State Court proceeding against the Owner (the "Proceeding I") seeking a declaration that the Lease could be sublet and/or assigned to OJ Resources without complying with the applicable provisions of the Lease. The Supreme Court of the State New York - County of Bronx ("New York Supreme Court"), on two occasions, denied the Debtors' applications seeking a declaration that the Lease could be sublet and/or assigned to OJ Resources. Among other things, the New

3

York Supreme Court ruled in favor of the Owner because the plaintiff was unable to demonstrate adequate assurance of future performance and also failed to provide OJ Resources' financials.

5) Notwithstanding, in breach of the Lease and in violation of the New York Supreme Court's orders, the possession and management of the Premises was turned over to OJ Resources pursuant to the terms of a Management Agreement (the "Management Agreement") made and entered as of March 14, 2008. In addition to turning over possession and management of the Premises to OJ Resources, the lessee also defaulted under various other terms and provisions of the Lease. In connection therewith, on May 23, 2008, the Owner, in compliance with the Lease and applicable law, served a "Five Day Notice of Default", which outlined the numerous monetary and non-monetary defaults under the Lease (the "First Termination Notice"). In response to the First Termination Notice, on or about May 31, 2008, the Debtor commenced a "Yellowstone proceeding" against the Owner in New York Supreme Court (the "Proceeding II").

6) On February 24, 2009, the parties entered into a settlement agreement in Proceeding II (the "Proceeding II Settlement"). The Proceeding II Settlement became part of the Lease and, among other things, it required the Debtor, 2300 XTRA Wholesalers, Inc. to: (a) evict OJ Resources from the Premises; (b) obtain a certificate of occupancy for the intended use of the Premises as a first class supermarket; (c) repair and maintain the roof of the Premises; (d) pay rent when due and (e) cure other defaults under the Lease. In addition, as part of the Proceeding II Settlement, the Debtor agreed to discontinue Proceeding I with prejudice.

7) Subsequent to the execution of the Proceeding II Settlement, OJ Resources was evicted from the Premises; however, the Debtor, 2300 XTRA Wholesalers, Inc. defaulted under the terms of the Lease (and Proceeding II Settlement), including failing to (a) perform any of the obligations under, and in accordance with, the Proceeding II Settlement and (b) pay rent when

4

due. In connection with these monetary and non-monetary defaults, on August 12, 2009, the Owner, in compliance with the Lease and applicable law, served a "Ten Day Notice of Termination" (the "Second Termination Notice"), which outlined the various defaults under the Lease (and the Proceeding II Settlement).

8) In accordance with the terms of the Second Termination Notice, the Lease terminated on September 10, 2009. The Debtor, 2300 XTRA Wholesalers, Inc., while not in physical possession, refused to vacate the Premises and on September 11, 2009, the Owner was forced to commence the Landlord/Tenant Proceeding, which is a holdover proceeding, in the New York Civil Court against the Debtors. The Debtors initially defaulted. This default was vacated and the Debtors filed an answer and after trial on the merits, on April 26, 2010, the Judgment of Possession was issued in favor of the Owner mandating the forthwith issuance of a warrant of eviction and imposing monetary damages in favor of the Owner in the sum of not less $238,329.00.

9) In the Affidavit of Pedro Bello dated April 29, 2010, the Debtor, 2300 XTRA Wholesalers, Inc.'s Comptroller that accompanies the Debtor, 2300 XTRA Wholesalers, Inc.'s chapter 11 petition [D.I. No. 1 Case No.: 10-12280 (Bankr. S.D.N.Y.)] (the "Bello Affidavit"), the Debtors do not dispute that they violated the terms of the Lease and are not in possession of the Premises. *See* Bello Affidavit ¶ 9. In addition, the Debtors do not dispute that the Judgment of Possession was entered after trial. *See* Bello Affidavit ¶ 11. Moreover, in the Bello Affidavit, the Debtors admit that they are non-operational and their only intention is to sell their "supermarket" business. *See* Bello Affidavit ¶¶ 13 - 14. It cannot be disputed that the Debtors have no interest in the Lease and the Premises and they are not property of the Debtors' estates and cannot be sold by them. Additionally, the Bello Affidavit also admits that OJ Resources, the

purported purchaser of the Debtors' business and interest in the Lease, failed to make payments required to be made by it under the Management Agreement, which is nothing more than a disguised attempt to convey the Debtors' business and interest in the Lease to OJ Resources. *See* Bello Affidavit ¶ 7.

10) The Debtors have also submitted that the Debtor, 2300 XTRA Wholesalers, Inc. was never in possession of the Premises and only the Debtor, Randall Meat Market, Inc. was in possession. *See* Declaration In Support of Notice of Removal ¶ 3. Admittedly, 2300 XTRA Wholesalers, Inc. was never in possession, the Lease terminated on September 10, 2009 and a judgment of possession was issued on April 26, 2010. Therefore, there is neither a legal nor a possessory interest in the Lease or the Premises. *See, e.g.*, *In re Éclair Bakery Ltd.*, 255 B.R. 121, at 133 n.23 (Bankr. S.D.N.Y. 2000) ("The filing of a bankruptcy petition does not resurrect a lease, and a bankruptcy court does not have the power to resurrect a lease which was terminated prior to the filing of a lessee's bankruptcy petition.") (internal citations omitted). In addition, "[a] state court judgment issued prior to the filing of a debtor's bankruptcy case is *res judicata* in the bankruptcy case, and the debtor may not relitigate issues already decided by the state court." *Id* (internal citations omitted). Here, the Debtors have submitted that they plan to sell their businesses - and the only way to do this would be to assume and assign the Lease. However, "where the lease has already been terminated according to its terms under the applicable state law and final state process has been issued, evicting the tenant[,] ... the trustee has nothing to assume." *Id.* at 134, citing *In re W.A.S. Food Service Corp.*, 49 B.R. 969, 972 (Bankr. S.D.N.Y. 1985) ("absent a revival of the landlord tenant relationship by the state court, the lease could not be assumed"). The Debtors cannot collaterally attack the state court judgment in this Court or the Bankruptcy Court. *See e.g.*, *Éclair Bakery*, 255 B.R. at 133 n.23.

6

11) Here, the Second Termination Notice is dated August 12, 2009 and expressly provided that the Lease would terminate on September 10, 2009. The Debtors did not take any action in response to this Second Termination Notice. In addition, the Landlord/Tenant Proceeding against the Debtors (and others) was commenced on September 11, 2009 and a judgment of possession was issued on April 26, 2010. Additionally, the Premises are vacant. Accordingly, the Lease terminated on and as of September 10, 2009. *See In re Cohoes Industrial Terminal, Inc.*, 70 B.R. at 220 (holding that tenant's interest in property was entirely extinguished and landlord-tenant relationship terminated upon the expiration of the stated termination date in the notice of termination, in each case, regardless of continued possession). Therefore, the Debtors cannot now claim any right, title or interest in and to the Lease and the Premises and by operation of § 362(a)(10) the automatic stay does not apply. *See* 3 Collier's on Bankruptcy ¶ 362.05[10] (15th rev. ed. 2008) ("Leases completely terminated prepetition should not be considered property of the estate because the debtor retains no legal or equitable interest after termination … ."); *In re Policy Realty Corp.*, 242 B.R. 127 ("[a] bankruptcy court may not exercise its equitable powers to create substantive rights that do not exist… [and] § 541(b)(2) specifically excludes form th[e] estate: any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under … title [11]"); *In re Lady Liberty Tavern Corp.*, 94 B.R. at 814 ("a state court default judgment terminating the [d]ebtor's leasehold interest .. had preclusive effect in the bankruptcy court") (internal citations omitted). Here, in addition to the Lease termination as of September 10, 2009, the April 26, 2010 judgment of possession terminating the Debtors' leasehold interest (although Randall Meat Market, Inc never had any leasehold interest in the Lease or the Premises) was rendered after trial and on merits;

7

accordingly, the Debtors cannot now assert any interest in the Premises or the Lease. *See* 11 U.S.C. §§ 362(b)(10) and 541(b)(2).

12) In their opposition (the "Debtors' Opposition") to the Owner's motion in the chapter 11 proceedings for determinate that the stay imposed by 11 U.S.C. 362 either does not apply or, in the alternative, to lift the stay (the "Lift Stay Motion"), the Debtors admit and/or do not deny that:

(a) The Owner has been awarded the Judgment of Possession on April 26, 2010 after trial on the merits.

(b) The Judgment of Possession is a final order and no notice of appeal was filed by the Debtors.

(c) The Owner issued the Second Termination Notice.

(d) In accordance with the Second Termination Notice, the Lease terminated on September 10, 2009.

(e) The purported purchaser OJ Resources never performed its obligations and defaulted under the terms of the Management Agreement as soon as it was entered.

(f) There are substantial pre- and post-petition defaults under the Lease - which Lease terminated by its terms on September 10, 2009 and the Judgment of Possession was issued on April 26, 2010.

(g) The Debtors' have no operations.

(h) The Premises are vacant.

(i) There is no potential purchase for the Debtors' interest, if any, in the "Lease".[3]

13) The Debtors' Opposition and other statements in the Notice of Removal are based upon the misguided belief that termination of the Debtors' interest in the Premises and the Lease required the issuance of a "warrant of eviction". This is because the Debtors are attempting to confuse the concepts of a "holdover" proceeding with a "non-payment" proceeding. In New

---

[3] A purported one paragraph letter of intent has now been submitted by the Debtors to the Bankruptcy Court.

8

York, a holdover proceeding is commenced where the relationship of landlord and tenant has been terminated prior to the commencement of the summary proceeding, either through the expiration of the lease term, or the termination of the lease based upon a tenant's default. That is what happened here on and as of September 10, 2009. However, the Debtors failed to turn over possession of the Premises to the Owner. As a result, the Owner commenced a "holdover" proceeding against the Debtors on September 11, 2009 and obtained the Judgment of Possession - - after trial on the merits. It may be true that in a "non-payment proceeding" situation, it is the issuance of a warrant of eviction for the removal of a tenant that cancels the lease agreement. *See*, New York Real Property Actions and Proceedings Law § 749(3). However, in a holdover case, there is no right for a commercial tenant to cure a default, after the lease has been terminated by the landlord. *See e.g., In re Policy Realty Corp.*, 242 B.R. at 128.

14) Since the Second Termination Notice was issued on August 12, 2009, in order to prevent the termination of the Lease and all of their interest in the Premises, the Debtors were required to commence a "Yellowstone proceeding". The purpose of a Yellowstone injunction is to enable a tenant confronted with a notice to cure, notice of default or threat of termination of its lease to obtain a stay tolling the running of the cure period so that after the determination of the merits, the tenant has an opportunity to cure the default and avoid a forfeiture of the leasehold. *See e.g., Empire State Building Associates v. Trump Empire State Partners*, 245 A.D.2d 225, 667 N.Y.S.2d 31 (1st Dep't 1997) (The Yellowstone injunction is a preliminary injunction designed to preserve the status quo until the rights of the parties can be fully adjudicated, by enjoining the landlord from taking any action to terminate the lease during the pendency of the action.) Here while they commenced same in connection with the First Termination Notice issued on May 23, 2008 they did not do so when the Second Termination Notice.

15) Clearly, the Lease terminated prior to the Petition Date and the Debtors are not operating at or in physical possession of the premises; accordingly, there is nothing for them to assume and assign. The Debtors also cite various cases in the Debtors' Opposition in support of their misguided argument. Each case supports the Owner's argument.

- *In re Lady Liberty Tavern Corp.*, 94 B.R. 812, 816 (S.D.N.Y. 1988) ("the state court's ..[default] judgment of possession ... is entitled to preclusive effect"). The case stands for the simple proposition that a commercial lease can be terminated by the issuance of a notice of termination and a judgment of possession in a holdover situation affirms such termination - - and the issuance or non-issuance of a warrant of eviction is irrelevant in such situations.

- *In re Cohoes Industrial Terminal, Inc.*, 70 B.R. 214, 219 (S.D.N.Y. 1987), *aff'd without opinion*, 831 F.2d 283 (2d. Cir. 1987) ("an order of the [state] court extinguishing the tenant's right to possession terminates the landlord-tenant relationship, regardless of the tenant's continued unauthorized possession of the premises.") (internal citations omitted).

- *In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392, 395 (Bankr. S.D.N.Y. 2001). A non payment case where the tenant filed chapter 11 before judgment was entered. In *P.J. Clarke's*, it should also be noted that the tenant was attempting to appeal an order of the Civil Court and the bankruptcy court noted that "Civil Court decision .. may be equivalent to the issuance of a 'warrant of eviction'." *Id.* at 399 - 400. Here, unlike *P.J. Clarke's*, this is a holdover situation, a Judgment of Possession, which is also a final order, has been issued and there is no appeal.

- *In re McCrory Corporation*, 1995 WL 71255 (S.D.N.Y. Feb. 21, 1995). A non-payment proceeding, Texas (not New York) law applied and, in any event, the tenant was in actual physical possession of the premises and, prior to the petition-date, the debtor had perfected its appeal of the underlying landlord-tenant court decision.

- *In re B.K.B. Ent., Inc.*, 97 B.R. 170 (Bankr. S.D.N.Y. 1989). The bankruptcy court order was entered in connection with an assumption (under § 365) and not a stay relief (under § 362) motion. There, the debtor remained in physical possession of the premises and continued to operate its business out of the premises and had appealed the underlying landlord-tenant court decision and the bankruptcy court held that the "only way for the debtor to sustain its rights to possession is through a successful appeal of the [landlord-tenant court's] decision". 97 B.R. at 172.

- *In re Joker Enterprises*, 1995 WL 626372 (Bankr. S.D.N.Y. Oct. 13, 1995). A non-payment proceeding in which the landlord and tenant had entered into a stipulation, the tenant continued in possession of the premises and a precondition

10

to assumption was that the tenant would have to apply to the New York state court for an adjudication of its rights. *Id.* \* 3.

- *In re Éclair Bakery Ltd.*, 255 B.R. 121 (Bankr. S.D.N.Y. 2000) (holding in dicta that warrant of eviction requirement for termination is in connection with non-payment proceedings).

- *In re W.A.S. Food Service Corp.*, 49 B.R. 969 (Bankr. S.D.N.Y. 1985). Trustee was required to seek adjudication of rights in New York state court.

16) Here the Debtors are attempting to use the protections afforded by 11 U.S.C. § 362 as a sword and not as a shield. The Debtors are trying to create rights that otherwise do not exist. The Lease terminated on September 10, 2009; the Judgment of Possession was entered on April 26, 2010, is a final order and has not been appealed. Accordingly, the Debtors have no property or other interest in the Lease and the Premises.

17) The Debtors have also asserted that the only defaults under the Lease are non-payment of rent. That is not the case as there are substantial other defaults under the Lease as a result of which the Owner was forced to send the Second Termination Notice and terminate the Lease on September 10, 2009. Many of these defaults are environmental issues and many others deal with health and safety concerns. The costs associated with such defaults are in excess of $1 million that must be expended by the Debtors to cure these breaches. An engineering report of Heimer Engineering, P.C. (the "Engineering Report") that details, as of January 2009, the repair, maintenance, safety and other issues, including those requiring that the Premises be brought up to code has been presented to the Bankruptcy Court in connection with the Lift Stay Motion. The costs of these repairs are estimated to exceed $1 million - - money that the Debtors do not have. In addition, the Environmental Control Board of the City of New York, has issued violations to the Premises. These are clear and convincing evidence of the Debtors' disregard of their obligations under the now terminated Lease.

**RELIEF REQUESTED AND BASIS THEREFOR**

18)     Remand is mandated pursuant to 28 U.S.C. § 1447(c). The following factors set forth in *Drexel Burnham Lambert Group, Inc. v. Vigilant Insurance Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991), are frequently used in deciding whether to remand an action pursuant to 28 U.S.C. § 1452(b): (a) the effect on the efficient administration of the bankruptcy estate; (b) the extent to which issues of state law predominate; (c) the difficulty or unsettled nature of the applicable state law; (d) comity; (e) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (f) the existence of the right to a jury trial; and (g) prejudice to the involuntarily removed [parties]. Here, each of these factors favors the Owner. The New York Civil Court has already entered a final judgment on the merits after trial. There is nothing more to litigate on the merits. The Debtors could have appealed the New York Civil Court but they refused to do so and instead choose bankruptcy as a sword. As a result of the underlying New York Civil Court Judgment of Possession, there is nothing further to litigate and there is *res judicata* and issue preclusion effect.

19)     Accordingly, remand is mandated pursuant to 28 U.S.C. § 1447(c)

20)     In any event, 28 U.S.C. § 1334(c)(2) requires mandatory abstention. 28 U.S.C. § 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced and can be timely adjudicated in a State forum of appropriate jurisdiction.

21)     Courts have found that mandatory abstention is required if the following six factors are present: (a) the motion to abstain was timely made; (b) the action is based on a state

law claim; (c) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (d) § 1334 provides the sole basis for federal jurisdiction; (e) an action was commenced in state court; and (f) that action can be "timely adjudicated" in state court. New York City Employees' Ret Sys. v. Eders (*In re Worldcom, Inc. Sec. Litig.*), 293 B.R. 308, 331 (S.D.N.Y. 2003); *In re Adelphia Communications Corp.*, 285 B.R. 127, 141 (Bankr. S.D.N.Y. 2002).

22) Actions arising in title 11 involve claims that are not based "on any right expressly created by title 11, but nevertheless, would have no existence outside of bankruptcy." *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B. R. at 407. "Related to" jurisdiction is presumptively non-core jurisdiction. *See Cooper v. Ins. Co. of Pennsylvania (In re Ben Cooper)*, 924 F.2d 36, 38 (2d Cir. 1991); *see also In re Masterwear Corp.*, 241 B.R. 511, 514 (Bankr. S.D.N.Y. 1999).

23) Here there is no question that each of the mandatory abstention factors are present. The Debtors' bankruptcy has nothing to do with the Landlord/Tenant Proceeding as the Landlord/Tenant Proceeding does not arise because of the Debtors' chapter 11 cases. The Landlord/Tenant Proceeding is a state law matter and it was commenced is New York state courts. Further, there already is a Judgment of Possession and final order by the New York Civil Court. Accordingly, mandatory abstention is required.

24) Owner also requests an award of Owner's costs and expenses, including attorney's fees pursuant to 28 U.S.C. § 1447(c) because it is undisputable that the Debtors lacked an objectively reasonable basis for filing their Notice of Removal.

**WHEREFORE**, the Owner respectfully requests the entry of an order remanding the above captioned Landlord/Tenant Proceeding or in the alternative for mandatory abstention and for attorney's fees pursuant to 28 U.S.C. § 1447(c) and granting such other and further relief as this court deems just and appropriate.

Dated: July 29, 2010  
Bronx, New York

                                        **Joseph A. Altman, P.C.**

                                        By: /s/ Joseph A. Altman  
                                          Joseph A. Altman  
                                          (JAA4290)  
                                          951 Bruckner Blvd.  
                                          Bronx, New York 10459  
                                          Phone: 718-328-0422

                                        Counsel for Condal Distributors Inc. and Condal Imports Inc.