Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 10-12280-alg

5  - - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  2300 XTRA WHOLESALERS, INC.,

9

10          Debtor.

11

12  - - - - - - - - - - - - - - - - - - - - -x

13

14                  U.S. Bankruptcy Court

15                  One Bowling Green

16                  New York, New York

17

18                  August 5, 2010

19                  2:49 PM

20

21  B E F O R E:

22  HON. ALLAN L. GROPPER

23  U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2   Initial Case Conference

3

4   Amended Motion Filed by Condal Distributors, Inc. and Condal

5   Imports, Inc. for an Order Granting Relief from the Automatic

6   Stay

7

8   Opposition Filed by Debtor to Amended Motion by Condal

9   Distributors, Inc. and Condal Imports, Inc. for an Order

10   Terminating the Automatic Stay and Related Relief

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Dena Page

Page 3

1    A P P E A R A N C E S :

2    GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP

3         Attorneys for Debtor

4         1501 Broadway

5         New York, NY 10036

6

7    BY:   NEAL M. ROSENBLOOM, ESQ.

8

9

10   LAW OFFICES OF JOSEPH A. ALTMAN, P.C.

11        Attorneys for Condal Distributors and Condal Imports

12        951 Bruckner Boulevard

13        1st Floor

14        Bronx, NY 10459

15

16   BY:   JOSEPH A. ALTMAN, ESQ.

17

18

19   HOFFMAN POLLAND & FURMAN, PLLC

20        Attorneys for Bogopa

21        220 East 42nd Street

22        Suite 435

23        New York, NY 10017

24

25   BY:   JONATHAN S. HOFFMAN, ESQ.

Page 4

1              P R O C E E D I N G S

2          THE COURT:  All right, 2300 XTRA.  May I have

3    appearances?

4          MR. ROSENBLOOM:  Neal M. Rosenbloom, Goldberg Weprin

5    Finkel Goldstein, attorneys for the debtors.

6          MR. ALTMAN:  On behalf of Condal, Joseph A. Altman.

7          THE COURT:  All right, one of the --

8          MR. ROSENBLOOM:  Your Honor --

9          THE COURT:  -- purposes of this hearing was for me to

10   issue a decision on the pending motions of the landlord.  Let

11   me just ask you before proceeding to that, are there any

12   developments that the parties wish to bring to my attention.  I

13   have the correspondence relating to the alleged changing of

14   keys and Mr. Rosenbloom's letter and the response from the

15   landlord that basically the allegations are in error, as my

16   client has confirmed that it never changed the locks after the

17   debtor obtained possession.  So I don't know that it matters,

18   but that's where the landlord says things stand, as I

19   understand it, Mr. Altman.

20         MR. ALTMAN:  That is correct, Your Honor.

21         THE COURT:  All right.

22         MR. ROSENBLOOM:  Your Honor, by way of developments,

23   after the hearing on the 21st, we communicated with counsel for

24   the landlord, provided them with numerous dates when we would

25   be available to meet that next week to try to reach some kind

Page 5

```
 1    of a reconciliation or accord.  We were advised by counsel that

 2    the landlord had no interest in meeting with us whatsoever

 3    under any circumstances.

 4         We also, Your Honor -- as I had advised Your Honor

 5    previously, we had entered into a contract with Bogopa Service

 6    Corp. to buy the debtor's assets and to obtain an assignment of

 7    the lease in consideration of the sum of two and a half million

 8    dollars.  To my left is Jonathan Hoffman who is a partner with

 9    Hoffman Polland & Furman, counsel for Bogopa.  They have

10    provided us with Bogopa's audited financial statement for the

11    year ending December 31, 2009.  We're prepared to share that

12    with counsel under, of course, a confidentiality agreement.

13         Bogopa is a privately-held corporation.  It consists

14    of, among other things, seventeen supermarkets and --

15         THE COURT:  Well, we don't get there until I decide

16    the current motions.

17         MR. ROSENBLOOM:  That's --

18         THE COURT:  So perhaps I need to do that first, and

19    then we can -- if I don't grant them, then we can take up -- I

20    gather you want to move to assume and assign the lease --

21         MR. ROSENBLOOM:  Correct, Your Honor, and --

22         THE COURT:  -- as well as the personalty, but

23    personalty, perhaps, may be less important than the lease, than

24    the assumption and assignment of the lease.

25         MR. ROSENBLOOM:  Clearly.  And we have -- in
```

Page 6

1   accordance with Your Honor's instructions, we did notice up a

2   proposed sale, which we did not make subject to higher and

3   better bids because the purchase price is more than sufficient

4   to pay all creditors in full.  We've obtained a date for that

5   hearing, which is the 31st of August.  We also brought on a

6   separate motion for prophylactic purposes to extend the time to

7   assume or reject the lease, and that motion is returnable, I

8   believe, the 19th.  We were advised that Your Honor's going to

9   be away, I believe, the week of the 23rd, so we could not --

10          THE COURT:  Well, we don't get to any of them --

11          MR. ROSENBLOOM:  We don't get to any of that unless --

12          THE COURT:  -- if I grant the landlord's motions.  So

13   why don't we -- shall we proceed to that?  I gather there are

14   no developments at all on the landlord/tenant front.

15          As I understand it, the removal proceedings are in a

16   procedural morass.  Somewhere in the district court, before a

17   district judge or before a magistrate, and with briefing

18   extending into the next millennium, or at least until the end

19   of the month.

20          MR. ROSENBLOOM:  Correct.

21          THE COURT:  That certainly doesn't clarify things, at

22   least as far as I'm concerned.

23          MR. ROSENBLOOM:  Correct, Your Honor.  There was an

24   order that was signed by Judge --

25          THE COURT:  Gardephe.

 1          MR. ROSENBLOOM:  Right.  Your Honor saw that order?

 2          THE COURT:  I saw that order, yes.

 3          MR. ROSENBLOOM:  Fine.

 4          THE COURT:  As I understood the procedures, motions to

 5     remand are supposed to be -- where the bankruptcy is in the

 6     Southern District of New York, motions are supposed to be

 7     automatically referred to the bankruptcy court for at least

 8     immediate disposition.  It can be appealed to the district

 9     court.  The statute, of course, says district court has

10     jurisdiction.  Statute says district court has jurisdiction

11     over everything.  On the other hand, it's not always done, and

12     it's up to the district court to handle its own docket, and I'm

13     certainly going to be the last person to tell the district

14     court what to do.  I've already stated that I believe that that

15     case was improvidently removed.  But so be it.  Just

16     complicates things, as I think you'll understand, if I get to

17     my decision.  Why don't I get to my decision?

18          MR. ROSENBLOOM:  Does Your Honor want to hear anything

19     further from the parties on this matter?

20          THE COURT:  Go ahead.  Any -- in terms of argument?

21          MR. ROSENBLOOM:  Yes.

22          THE COURT:  No.  I've -- the parties have briefed the

23     issues.  Unless there's anything further you wish to bring to

24     my attention.  Mr. Altman reargued the matter in his remand

25     papers, and I read those as well.  And you certainly argued the

Page 8

1    matter, Mr. Rosenbloom.  I think I understand the issues.  At

2    least I hope I understand the issues, and if I haven't, there

3    are at least three levels of appeal to tell me where I've

4    erred.

5              MR. ALTMAN:  I did -- well --

6              THE COURT:  Yes, sir?

7              MR. ALTMAN:  Just to note for the record that I did

8    not receive the July, nor the August payment.  When I spoke to

9    counsel, I indicated to him that my client was just waiting for

10   the Court's decision, and that the July payment was due and

11   then with respect to the August one, as well.

12             THE COURT:  Mr. Rosenbloom?

13             MR. ROSENBLOOM:  When we were last here, Your Honor --

14             THE COURT:  This is -- bankruptcy is not an option.

15             MR. ROSENBLOOM:  No, no, no.  I have the check.

16             THE COURT:  Hand it over.

17             MR. ROSENBLOOM:  We were supposed to tender this when

18   we met, Your Honor.  I do have the check.

19             THE COURT:  Hand it over.  All right.  That's for

20   July?

21             MR. ROSENBLOOM:  Yes, sir.

22             THE COURT:  Or July and August?

23             MR. ALTMAN:  Just July.

24             MR. ROSENBLOOM:  No, that is July, Your Honor.

25             THE COURT:  Well, August -- we're past August -- I

Page 9

1    assume this lease, like every other lease, provides for payment

2    in advance.

3            MR. ROSENBLOOM:  On the 1st, with a ten-day grace --

4            THE COURT:  On the 1st of the month.

5            MR. ROSENBLOOM:  -- with a ten-day grace period.

6            THE COURT:  All right, I suppose if you are going to

7    be evicted forthwith after my decision, there might be some

8    reluctance to pay the rent.

9            As I assume the parties may know, there's a lot of

10   very expensive litigation out there on the question of stub

11   rent and liability for stub rent under 365(d)(3).  I wrote an

12   opinion giving my views on that issue and hoping it would be

13   appealed so that we'd get a decision from the Second Circuit,

14   and parties wouldn't have to fight over it, at least in this

15   circuit.  But, alas, no one appealed.  Everyone settled the

16   issue.  So that's unknown.

17           So we'll leave the August rent aside for the moment.

18   Certainly, if there are any further proceedings later in the

19   month, I'll expect the August month rent to be paid.

20           MR. ROSENBLOOM:  Clearly.

21           THE COURT:  Anything further?

22           MR. ROSENBLOOM:  I just wanted to point out to the

23   Court that our client relies, of course, on the provisions of

24   749 of the Real Property Actions and Proceedings law.

25           THE COURT:  I didn't bring it up, but yes, I have my

Page 10

1   volume of it downstairs.  Brings back memories of many years

2   ago when I went into landlord/tenant court, too.

3          MR. ROSENBLOOM:  And I believe, Your Honor, that that

4   statute really does not distinguish, whatsoever, as between the

5   termination of holdover proceedings or nonpayment proceedings.

6          THE COURT:  Well, now, that's been argued before.

7   Parties have arg -- I understand the argument.

8          Anything further?

9          All right, let me get to my decision.

10         2300 XTRA Wholesalers, Inc. (the Debtor) filed a

11  voluntary petition for relief under Chapter 11 of the

12  Bankruptcy Code on April 29, 2010.  Condal Distributors, Inc.

13  and Condal Imports, Inc., collectively, the landlord, the

14  owners of a single-story commercial building located at 2300

15  Randall Avenue, Bronx, New York (the premises) move for an

16  order determining that under Bankruptcy Code Section

17  362(b)(10), the automatic stay does not apply to the debtor's

18  real property lease of the premises (the lease), or in the

19  alternative, for an order modifying the automatic stay pursuant

20  to Bankruptcy Code Section 362(d)(1) and (2) to permit the

21  landlord to exercise his state law remedies with respect to the

22  lease and evict the tenant.

23         Background.  The landlord and debtor entered into the

24  lease in April 1992.  During February 2008, it appears the

25  debtor attempted to sublet and/or assign the lease to O.J.

1    Resources, Inc. (O.J. Resources).  When the landlord objected

2    to the subletting and/or assignment, the debtor commenced a New

3    York State Court proceeding against the landlord seeking a

4    declaration that the debtor could sublet and/or assign the

5    lease (proceeding 1).  The Supreme Court, County of Bronx

6    denied the debtor's application seeking a declaration that it

7    could assign or sublet.  The landlord alleges the debtor,

8    notwithstanding the terms of the lease and in contravention of

9    the New York Supreme Court's ruling, turned over possession and

10   management of the premises to O.J. Resources pursuant to the

11   terms of a written agreement.  In addition, the debtor

12   allegedly defaulted under various other terms and provisions of

13   the lease.

14        On May 23, 2008, the landlord served upon the debtor a

15   five-day notice of default based on alleged monetary and

16   nonmonetary defaults under the lease.  In response, the debtor

17   commenced a so-called Yellowstone action against the landlord

18   in New York Supreme Court on or about May 31, 2008.

19        On February 24, 2009, the parties entered into a

20   settlement agreement in connection with the Yellowstone

21   proceeding.  The settlement required the debtor to, one, evict

22   O.J. Resources from the premises, two, obtain a certificate of

23   occupancy for the intended use of the premises, three, pay rent

24   when due, and four, cure other defaults under the lease.  In

25   addition, as part of the settlement, the debtor agreed to

2500 XTRA WHOLESALERS, INC.

Page 12

1    discontinue proceeding 1 with prejudice.

2        Subsequent to the settlement's execution, O.J.

3    Resources was evicted from the premises, but the debtor

4    allegedly defaulted under other terms of the lease and the

5    settlement, including failure to pay rent when due.  The

6    landlord served a ten-day notice of termination under which the

7    landlord claims the lease terminated on September 10, 2009.

8    The debtor refused to vacate the premises and on September 11,

9    2009, the landlord commenced a holdover proceeding in civil

10   court against the debtor.

11       On April 26, 2010, a trial on the merits was held

12   before Judge Arthur F. Engoron in the civil court of the City

13   of New York.  After trial, Judge Engoron rendered an oral

14   decision on the record and issued a final judgment of

15   possession and monetary damages in the amount of 238,329

16   dollars against the debtor on April 26, 2010.

17       The landlord purported to serve notice of entry on the

18   debtor on May 1, 2010, but this was several days after the

19   debtor had filed its Chapter 11 petition.  The landlord did not

20   and has not obtained a warrant of eviction under New York law.

21       The debtor has not appealed from the state court

22   judgment of possession and asserts its time to do so has not

23   expired because it has not received valid notice of entry.

24       The debtor did remove the state court action to the

25   district court pursuant to 28 U.S.C. Section 1452 and

Page 13

1   proceedings to remand are pending in the district court.

2          Discussion.  The principal issues for determination

3   are, one, whether under Bankruptcy Code Section 362(b)(10) the

4   debtor's lease terminated by expiration of the stated term of

5   the lease before the commencement of the filing of the petition

6   so as to preclude the debtor from obtaining stay relief

7   automatically under the Bankruptcy Code in this court, and two,

8   whether cause exists under Bankruptcy Code Section 362(d) to

9   lift the automatic stay.

10          1.  Expiration of the Lease.  Section 362(b)(10)

11   excludes from the protection of the automatic stay of Section

12   362(a) of the Bankruptcy Code "any act by a lessor to the

13   debtor under a lease of nonresidential real property that is

14   terminated by the expiration of the stated term of the lease

15   before the commencement of or during a case under this title to

16   obtain possession of such property."  Whether a lease is

17   terminated is to be resolved by referenced applicable

18   nonbankruptcy state law.  See In re:  Policy Realty Corp., 242

19   B.R. 128 (S.D.N.Y. 1999).  Landlord relies on In re:  Policy

20   Realty, arguing that the debtor's lease was terminated prior to

21   the date of the petition by virtue of the debtor's defaults

22   under the settlement and the passage of the ten-day notice

23   period.  Although In re:  Policy Realty dealt with the question

24   whether a lease terminated prepetition, there was no issue in

25   that case of the tenant's right to appeal or otherwise seek

1    review in the state court system.  It is settled that the

2    automatic stay remains in effect when the debtor has the

3    opportunity to appeal a state court decision or otherwise seek

4    review thereof.  See In re:  Stoltz, 197 F.3d 625, 630 (2d Cir.

5    1999) citing Robinson v. Chicago Housing Authority, 54 F.3d

6    316, 321 (7th Cir. 1995).  See also P.J. Clarke's Restaurant

7    Corp., 265 B.R. 392, 398-99 (Bankr. S.D.N.Y 2001).  The

8    landlord also relies on In re:  Lady Liberty Tavern Corp., 94

9    B.R. 812 (S.D.N.Y. 1988) for the proposition that the tenant

10   has no rights, but the landlord ignores the fact that the

11   Court, while finding a state court decision on lease

12   termination binding, left open the possibility that a motion to

13   vacate the default judgment could be brought in state court and

14   left that issue to be determined by the bankruptcy court on

15   remand, 94 B.R. at 817, note 3.

16        In this case, the debtor has not appealed, but it

17   appears from the record that its time to do so has not lapsed.

18   Under New York law, "an appeal, as of right, must be taken

19   within thirty days after service by a party upon the appellate

20   of a copy of the judgment or order appealed from and written

21   notice of its entry."  See P.L.R. 5513(a).  While the landlord

22   purported to serve the debtor with notice of entry of the state

23   court judgment of possession, it did so on May 1, 2001 after

24   the debtor filed its Chapter 11 petition.  It is well-settled

25   that actions taken in violation of the stay are void and

1    without effect.  See E.G. Kalb v. Feuerstein 308 U.S. 433

2    (1940), In re:  48th Street Steakhouse, Inc., 835 F.2d 427 (2d

3    Cir. 1987).  The debtor has not yet been served with valid

4    notice of entry of the state court judgment, and its time to

5    appeal under New York law has not begun to run.

6             Although the debtor's time to appeal has not expired,

7    at least as shown on this record, it is well-established that

8    tenant's ability to stave off an eviction by virtue of a

9    bankruptcy filing is not unlimited.  The courts have held that

10   the stay remains in effect to permit the debtor to permit the

11   state court remedies -- to pursue its state court remedies, but

12   only if "bona fide litigation is pending in the state court (or

13   may with a reasonable likelihood of success be brought there)."

14   In re:  Eclair Bakery, 255 B.R. 121, 138 (Bankr. S.D.N.Y.

15   2000).

16             In this case the tenant has made a sufficient showing

17   of its ability as a consequence of what appears to be a serious

18   contract to sell the lease to cure all arrears.  Whether this

19   is enough to obtain vacator of the judgment of possession is a

20   matter for the state courts.  The landlord insists that the

21   debtor cannot cure because the debtor, here, breached a

22   conditional limitation in the lease.  It is unclear from the

23   civil courts oral opinion exactly why the court held for the

24   landlord, but it is clear that the state court didn't refer to

25   conditional limitations, and in any event, the issue is one for

1    the state court system.

2         The landlord argues that all of the cases relating to

3    stays after a bankruptcy filing are nonpayment rather than

4    holdover proceedings and that there is a critical distinction.

5    But this is not so.  The eviction proceedings in P.J. Clarke's,

6    which was my case, were commenced and prosecuted as a holdover

7    for breach of a conditional limitation.  The breach was

8    nonpayment of rent, but the landlord there had cleverly made

9    nonpayment of rent a breach of a conditional limitation, and

10   therefore, was able to argue that it wiped out the tenant's

11   rights by virtue of the tenant's failure to pay rent on its

12   claim of the right of setoff.  In any event, P.J. Clarke's

13   contains a much more thorough discussion of these issues.  I

14   believe it to be directly on point and the parties are referred

15   thereto.

16        The lease has apparently not terminated within the

17   meaning of Section 365(b)(10) for the separate reason that the

18   landlord did not obtain a warrant of eviction.  It appears

19   well-established under New York law that "a lease is not

20   cancelled by the issuance of a notice of petition in a summary

21   proceeding, nor even by the entry of a judgment therein, nor

22   even by the execution of the warrant.  It is the issuance of

23   the warrant that effects the cancellation."  See Rasch's

24   "Landlord and Tenant including Summary Proceedings," Section

25   46: 18, 4th ed. (1998), internal citations omitted.  See also

1   RPAPL Section 749(3), 105 Franklin Street Court v. Serotoff,

2   284 A.D. 262, 131 (N.Y.Sup. 2d 257), first department (1994)

3   affirmed 308 N.Y. 1025, 127 N.E. 2d 865 (1995) where the court

4   said, "The final order and summary proceedings does not

5   terminate the relationship of landlord and tenant.  And the

6   point of termination occurs upon the issuance of the warrant

7   which gives possession to the landlord."  The landlord cites

8   no authority under New York law for its proposition that the

9   issuance of a warrant of eviction isn't irrelevancy in a

10  holdover as opposed to a nonpayment case.  Section 749(3) of

11  the Real Property Actions and Proceedings Law relied on by the

12  landlord does not distinguish between holdover and nonpayment

13  proceedings.  It provides, flatly, "The issuing of a warrant

14  for the removal of a tenant cancels the agreement under which

15  the person removed held the premises and annuls the relation of

16  landlord and tenant, but nothing contained herein shall deprive

17  the court of the power to vacate such warrant for good cause

18  shown prior to the execution thereof."  The landlord has not

19  obtained a warrant of eviction, and thus the lease did not

20  terminate, under New York law, before the filing of the

21  petition for that additional reason.

22          Accordingly, the Court finds that the nonresidential

23  real property lease is not "terminated by the extension of the

24  stated term of the lease before the commencement of or during a

25  case under this title" within the meaning of Section

1   362(b)(10).

2         2.  Relief from the Automatic Stay.  Landlord moves

3   for relief from the automatic stay pursuant to Sections

4   362(d)(1) and (2).  Section (d)(2)(B) requires the landlord to

5   show that the lease is not necessary for an effective

6   reorganization.  Since it appears to be the debtor's sole

7   asset, the landlord cannot make the requisite showing at this

8   stage of the case and has not attempted to do so.  See In re:

9   Sweet N Sour 7th Ave Corp., 2010 B.R. Lexis 1836 at *13 (Bankr.

10  S.D.N.Y., June 18, 2010).

11        Section 362(d)(1) permits relief from the automatic

12  stay for cause.  The debtor has paid postpetition rent or use

13  and occupancy at the lease rent -- at the least rate.  It has

14  produced evidence of a contract to sell the lease to a third

15  party for a sum that would permit cure of all defaults, payment

16  of all unsecured debt, and a substantial return to equity.  The

17  landlord has not established that cause exists to terminate the

18  automatic stay at this early stage of the case.  See Id. In re:

19  Sweet N Sour 7th Ave Corp.

20        Conclusion.  Based on the foregoing, the landlord's

21  motion for an order determining that the automatic stay does

22  not apply and its motion for relief from the stay is denied.

23  The debtor is directed to settle an appropriate order on three

24  days' notice.

25        We should now establish a timetable for the debtor's

Page 19

1   motion to assume and assign the lease pursuant to the proposed

2   contract of sale.  It is also incumbent on the debtor to

3   commence appropriate proceedings to obtain relief under the

4   state law.  I do not know how the debtor can do that with the

5   case pending before Judge Gardephe, but I leave that to the

6   parties.

7           So Mr. Rosenbloom, what do you want me to do with

8   regard to your motion -- I gather you have a motion to extend

9   time --

10          MR. ROSENBLOOM:  Correct.

11          THE COURT:  -- to assume or reject.  That is pending

12  on what date?

13          MR. ROSENBLOOM:  It's returnable, Your Honor, on the

14  19th at 11 a.m.

15          THE COURT:  All right, and you really want a minimal

16  extension because --

17          MR. ROSENBLOOM:  Precisely.

18          THE COURT:  -- your deadline under the statute, your

19  three months are --

20          MR. ROSENBLOOM:  Yes.

21          THE COURT:  Well, your four months.  When does --

22          MR. ROSENBLOOM:  Four months.

23          THE COURT:  Four months expires --

24          MR. ROSENBLOOM:  On the 27th.

25          THE COURT:  -- on the 27th.  So let me suggest this.

Page 20

```
 1    I can hear you on the 19th.  If you're coming back on the 30th

 2    or 31st --

 3            MR. ROSENBLOOM:  I believe it's the 31st.  And in my

 4    motion, I specifically asked --

 5            THE COURT:  31st.

 6            MR. ROSENBLOOM:  -- that it be carried over until

 7    then.

 8            THE COURT:  The landlord -- obviously, counsel needs a

 9    chance to consult with its client.  Landlord needs an

10    opportunity to consider where things stand.  The parties can,

11    of course, agree to -- we're talking, Mr. Altman, about the

12    four-month period under 365(d)(3) of the Bankruptcy Code that

13    limits a debtor -- debtor's initial period of time to assume or

14    reject a nonresidential real property lease to four months from

15    the petition date.  The Court can extend that time once for up

16    to three months for cause shown.  After that, the Court cannot

17    extend the time.  That was one of the statutory amendments that

18    the landlords obtained in a recent amendment to the Bankruptcy

19    Code.  Parties can agree to put off the date so they don't have

20    to come back multiple times.  The parties can obviously, by

21    written stipulation, even agree to put off the seven-month

22    period.  But that can only be done with the landlord's written

23    consent.  I don't want to have the parties have to come back

24    here more times than they need to, but you can consider where

25    you wish to go with regard to that hearing.  Perhaps that
```

1  hearing would be useful in connection with the landlord's

2  motion to assume and assign the lease.

3          Now, in order to assume and assign the lease under the

4  Bankruptcy Code, the tenant has to show that the landlord has

5  adequate assurance of future performance.  One way of doing

6  that is to show the financials of the proposed assignee, give

7  the landlord an opportunity to examine into the issues relating

8  to the assumption and to hold a hearing and a trial if

9  necessary.  Now, there is authority in the bankruptcy cases

10  that with a warrant of eviction outstanding, the debtor doesn't

11  have a sufficient interest in the lease to assume and assign

12  it.  I assume the parties can argue just as well that you

13  really can't assume and assign it with a state court judgment

14  outstanding, and I've said in my decision, you've got to go

15  back to state court and get that judgment vacated if the

16  landlord will agree to any resolution, here.  It seems to me

17  that I can proceed with the assumption and assignment

18  proceedings here, subject to appropriate proceedings in the

19  state court.  The proceedings here could be held pending state

20  court proceedings.  Clearly, your contract, it would seem to

21  me, would be relevant when you go back to the state court, and

22  if you want a trial on whether or not the assignee is a

23  reasonable tenant and the landlord would have adequate

24  assurance of future performance, I'll give you one.  If you

25  want to come back the last week of August for any kind of a

1   hearing, I'll be here.  But most lawyers who have any sense

2   take off sometime at the end of August, and I don't want to

3   interfere with anybody's vacation because I happen to be here.

4        So I really -- I think, perhaps, what we should do is

5   end the hearing today, give the parties an opportunity to

6   consider where they are.  We have a hearing on the 19th if we

7   need one.  If we don't, parties can agree to put everything off

8   until, I guess it's the 30th.  Perhaps we should have a

9   pretrial on the 19th when the landlord -- if the landlord wants

10  to go forward, or if the parties want -- or either party wants

11  to go forward with the assumption and assignment proceedings,

12  there may be issues relating to the information that the

13  landlord -- that a landlord reasonably requests when

14  considering an assignment or a sublet.  I can't assume that the

15  parties will agree on anything in this case.  But I can always

16  hope.

17        I realize that landlord/tenant relations are probably

18  as bad as any, but very often, when parties get to bankruptcy

19  court, they find a way to resolve things.  I've said this

20  before.  I've even had spouses in bankruptcy court who have

21  been fighting each other in state court for many, many years,

22  and the husband -- usually the husband files a bankruptcy

23  petition as a last ditch effort to hold off the spouse.  When

24  they get to bankruptcy court, sometimes people are able to

25  bring things together but that's for them.  So I guess our --

Page 23

```
 1   at the moment, I'll just leave things with this being my

 2   decision, and we have a hearing on the 19th if we need one.  We

 3   need a -- parties want to turn that into a telephonic hearing

 4   and save themselves -- at least save you a trip down from the

 5   Bronx, I'm -- if the parties can agree, I'm certainly not going

 6   to stand in the way.

 7           All right, thank you very much.  I should also thank

 8   both parties for excellent papers on this issue.

 9           MR. ROSENBLOOM:  Your Honor, I have -- we are prepared

10   to share the bulk of our financials with the landlord.  We

11   would ask --

12           THE COURT:  Maybe that's a start.

13           MR. ROSENBLOOM:  We would ask that the landlord, of

14   course, sign a confidentiality agreement.

15           THE COURT:  I don't think Mr. Altman can sign that for

16   his client.

17           MR. ROSENBLOOM:  Precisely.  I --

18           THE COURT:  And I'm sure he'll take it up with his

19   client.

20           MR. ROSENBLOOM:  Precisely.

21           MR. ALTMAN:  That's correct, yes.

22           THE COURT:  All right, thank you very much.

23           IN UNISON:  Thank you, Your Honor.

24       (Proceedings concluded at 3:26 PM)

25
```

Page 24

I N D E X

RULINGS

|  | Page | Line |
|---|---|---|
| Landlord's motion for an | 18 | 22 |

order determining that

the automatic stay does

not apply and its

motion for relief from

the stay is denied

Page 25

1

2                        C E R T I F I C A T I O N

3

4    I, Dena Page, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6

7

8    _____

9    Dena Page

10

11   Veritext

12   200 Old Country Road

13   Suite 580

14   Mineola, NY 11501

15

16   Date:  August 13, 2010

17

18

19

20

21

22

23

24

25