Neal M. Rosenbloom, Esq.
GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
*Attorneys for the Debtors*
1501 Broadway, 21st Floor
New York, New York 10036
(212) 221-5700

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                          Chapter 11

2300 XTRA WHOLESALERS, INC., et al.                             Case No.: 10-12280 (ALG)

                                    Debtors.
-----------------------------------------------------------x

### DEBTORS' OPPOSITION TO MOTION OF
### CONDAL DISTRIBUTORS INC. AND CONDAL IMPORTS INC.
### FOR (A) RELIEF FROM THE AUTOMATIC STAY, (B) DISMISSAL
### (OR CONVERSION TO CHAPTER 7) AND/OR ACCESS TO
### THE PREMISES AND DEBTORS' CROSS-MOTION
### FOR RELIEF FROM THE AUTOMATIC STAY
### TO PERMIT DEBTORS TO PURSUE AN APPEAL OF
### <u>A CITY COURT JUDGMENT</u>

**TO THE HONORABLE ALLAN L. GROPPER,
UNITED STATES BANKRUPTCY JUDGE:**

2300 Xtra Wholesalers, Inc. ("2300 Xtra") and Randall Meat Market, Inc. ("Randall Meat") (jointly, 2300 Xtra and Randall Meat are the "Debtors"), by their attorneys, Goldberg Weprin Finkel Goldstein LLP, as and for their joint opposition to motion by Condal Distributors, Inc. ("Condal Distributors") and Condal Imports, Inc. ("Condal Imports") (jointly, Condal Distributors and Condal Imports are "Condal entities") for relief from the automatic stay, or alternatively, for dismissal (or conversion to Chapter 7 case) and access to the premises (the "Motion"); and as and for their cross-

motion for relief from the automatic stay for the limited purpose of permitting Debtors to pursue an appeal of a city court judgment ("Debtors' Motion"), hereby represent and show this Court as follows:

## PRELIMINARY STATEMENT

1. Contrary to Condal entities' insinuations in the Motion, the Debtors behavior at all times throughout this case has been marked with good-faith and fair dealing. On the other hand, Condal entities' conduct has, at minimum, been uncooperative and, at worst, has been driven by unconscionable forces of greed and avarice. In a nutshell, this protracted battle between the Debtors and the Condal entities centers on a certain lease to which 2300 Xtra is a tenant and Condal entities are landlords. Over the last number of years, Condal entities have actively sought to deprive the Debtors of the benefits of the lease which has substantial value significantly above its market rate value.

2. Curiously, Condal entities' Motion fails to mention any of the facts responsible for placing the parties in as adversarial of position as they now find themselves. This includes the fact that Condal entitles are currently appealing this Court's decision dated August 31, 2010 approving Debtors' sale transaction and authorizing assumption and assignment of the lease at issue to a third-party to the Second Circuit Court of Appeals after this decision was affirmed by the United States District Court for Southern District of New York. While, due to the protracted nature of this case, the facts are familiar to this Court and the parties involved, Debtors believe some background is still in order.

## **RELEVANT BACKGROUND FACTS**

3. On April 29, 2010, the 2300 Xtra filed a voluntary petition under Chapter 11 of the Bankruptcy Code. 2300 Xtra is an entity which was established, among other things, to hold the lease for the supermarket at 2300 Randall Avenue, Bronx, New York (the "Premises"). Randall Meat was established for the purpose of operating the supermarket at the Premises. Randall Meat filed its Chapter 11 case on May 28, 2010. An order was entered by this Court on June 3, 2010, consolidating the cases for procedural purposes.

4. In April 1992, 2300 Xtra, as tenant, entered into a 30-year lease with the Condal entities, as landlord, to operate a 35,079 square foot supermarket and dry food product warehouse facility at the Premises (the "Lease").

5. While for the initial 15 years, the landlord/tenant relationship was completely amicable, all of this changed on or about February 15, 2008 when the Debtors entered into a written agreement to sell the supermarket business to an entity known as O.J. Resources, Inc. ("O.J.") for the sum of $4,500,000.00 plus inventory and sought approval for the sale from the Condal entities. While awaiting approval from Condal entities for the sale, the Debtors entered a management agreement with O.J. which enabled O.J. to manage the business on the Debtors' behalf pending a closing. In hopes of obtaining approval of the Condal entities to the sale, the Debtor offered to post additional security of $174,492.00 for a period of five years after closing, which when added to the existing security of $46,164.00, would provide Condal entities with security equal to a full year's base rent under the Lease.

3

6. As these events were unfolding, it became clear that the Condal entities had another agenda rather than moving forward in good faith to allow the sale of the business. Accordingly, the Debtors brought a declaratory relief action to authorize the sale in the Supreme Court, Bronx County, and on May 14, 2008, the Honorable Maryanne Briganti Hughes entered an order which denied the Debtors' motion without prejudice on the grounds that the Condal entities were to be furnished with current financial information and the source of funds to be used to purchase the business.

7. While the declaratory judgment action was pending, the Condal entities then gave the Debtors a notice of default under the Lease which then caused the Debtors to commence a "so-called" Yellowstone Action to preserve the Lease (the "Yellowstone Action"). The Yellowstone Action was settled by stipulation

8. In the meantime, because O.J. defaulted under the management agreement, the Debtors gave notice to O.J. that the Debtors terminated the management agreement. When O.J. refused to surrender possession of the premises to the Debtors, an ejectment proceeding was brought in the Civil Court, Bronx County, which action was highly contested by O.J. Ultimately, the Debtors finalized their actions to have the marshal execute upon a warrant of eviction against O.J. and the eviction process was concluded on April 22, 2010 when the City Marshal changed the locks to the Premises and gave possession of the Premises back to the Debtors.

9. During the course of the ejectment proceeding, the Condal entities were fully cognizant of the fact that the Debtors had placed O.J. in default of the management agreement and were in the process of taking steps to evict O.J. and regain

possession of the Premises. Despite knowing that the Debtors were not in possession of the Premises, the Condal entities served notices of default and notice of lease termination at the Premises. Thereafter, still without providing actual notice to the Debtors, Condal entities brought a holdover eviction proceeding and obtained a judgment of default against the Debtors.

10. The Debtors obtained an order to show cause to vacate the default. The order to show cause was vehemently opposed by the Condal entities. A decision and order was entered by the Civil Court vacating the default judgment and providing that the matter be brought for trial on April 26, 2010 in the New York City Civil Court, Bronx County. Despite the Debtors' request that the matter be adjourned, based upon possession of the premises having only been returned to the Debtors only four days before and the Debtor's willingness to make payments to the Condal entities, a trial was conducted on April 26, 2010, at which time the court directed that possession be given back to the Condal entities and issuing a monetary judgment (the "April 26, 2010 Judgment"). The April 26, 2010 Judgment is annexed hereto as Exhibit "A".

11. Although the Condal entities was awarded possession, no warrant of eviction was obtained nor were any steps taken which are required to finalize the eviction process under New York law.

12. The Debtors' Chapter 11 cases were filed on an emergency basis to preserve the value of the executory lease agreement.

13. After Debtors' filing of their respective bankruptcy petitions and after this Court consolidated the cases for procedural purposes, on June 10, 2010, Condal

entities sought entry of an order determining that the automatic stay under section 362(b)(10) of the Bankruptcy Code did not apply, alleging that the Debtors did not have a property interest in the Lease or, in the alternative, that the automatic stay be vacated for cause under section 362(d)(1) or (d)(2) of the Bankruptcy Code. The Debtors opposed this Motion.

14.     A preliminary hearing was held on June 30, 2010, and a second hearing was held before the Bankruptcy Court on July 21, 2010. At the July 21, 2010 hearing, Condal entities admitted that no warrant of eviction have ever been issued and the Bankruptcy Court found that 2300 Xtra was not served with notice of entry of the judgment until May 1, 2010, after the Chapter 11 case was already filed by 2300 Xtra. A final hearing on the lift stay motion was held before the Bankruptcy Court on August 5, 2010. At the August 5, 2010 hearing, Bankruptcy Judge Gropper read a decision into the record denying the motion by the Condal entities and directing that an order be settled on three days' notice. The order denying Condal entities' section 362 motion was entered on August 25, 2010 ("August 25, 2010 Order").

15.     Meanwhile, on July 20, 2010, the Debtors entered into a written agreement of sale with Bogopa Service Corp. ("Bogopa"). The sale to Bogopa was for $2,500,000.00 cash without contingencies. Bogopa was and continues to be a giant in the New York metropolitan area independent supermarket industry. It has twelve large supermarkets in the New York metropolitan area, generates hundreds of millions of dollars of annual sales, earns millions of dollars in profits each year and has established lines of credit with a bank and its wholesale grocer in addition to having millions of

6

dollars in its bank accounts according to fully audited financing statements. In other words, a landlord could not expect to have a better supermarket tenant. Even so, Condal entities obstinately opposed the sale.

16. On August 31, 2010, the Bankruptcy Court held a hearing to approve the sale transaction and authorize the assumption and assignment of the Lease to Bogopa. At that hearing, Bogopa's chief financial officer, Mr. Jae Kim, testified for almost an entire day and Bogopa's audited financial statements for the 2008 and 2009 calendar years were submitted under seal based upon the confidential information contained within the financial statements. Bogopa offered to post with the Condal entities the additional sum of $112,602.00 as security for a period of five years, which, when added to the $46,164.00 of security presently held by the Condal entities would provide a security deposit equal to six months rent under the Lease.

17. Despite Condal entities' opposition, this Court approved the sale transaction and authorized the assumption and assignment of the Lease to Bogopa subject only to the Debtors obtaining relief from New York City Civil Court from the April 26, 2010 Judgment (the "August 31, 2010 Order").

18. Instead of accepting a payment in full satisfaction of the April 26, 2010 Judgment as contemplated under approved sale transaction, Condal entities instead chose to appeal the August 31, 2010 Order to the United States District Court, Southern District of New York. On January 14, 2011, Judge Castel affirmed both Bankruptcy Court orders—August 25, 2010 Order and August 31, 2010 Order. Condal entities subsequent motion to reconsider was denied by Judge Castel on the merits. Condal

7

entities are now appealing Judge Castel's decision to the Second Circuit Court of Appeals.

19. In the meantime, on or about October 6, 2010, by an Order to Show Cause and pursuant to the August 31, 2010 Order, the Debtors sought relief from New York City Civil Court from the April 26, 2010 Judgment. By decision dated January 3, 2011, New York City Civil Court Judge Engoron denied Debtors' motion to vacate the April 26, 2010 Judgment which would have permitted the Debtors to proceed with the assumption and assignment of the Lease to Bogopa.

20. Now, the Debtors seek relief from the automatic stay for the limited purpose of pursuing an appeal of the April 26, 2010 Judgment with the state court. In turn, Condal entities are seeking relief from the automatic stay, or alternatively, dismissal or conversion of the Debtors' cases, and/or access to the Premises.

21. Condal entities' Motion should be denied in its entirety as it fails to show sufficient basis for any of the drastic remedies sought. However, this Court should grant Debtor's Motion for relief from automatic stay for limited purpose of pursuing an appeal of the April 26, 2010 Judgment.

## ARGUMENT

### A. CONDAL ENTITIES' MOTION IS PROCEDURALLY DEFECTIVE

22. Initially, Condal entities failed to serve the Motion within the time prescribed for such service under Fed. R. Bankr. P. 2002(a)(4), which mandates at least a 20 days' notice by mail of a hearing on a dismissal or conversion of a case. Further,

8

Condal entities failed to serve the Motion upon the Debtors, as required under Fed. R. Bankr. P. 2002(a)(4).

23.  Fed. R. Bankr. P. 2002(a)(4) provides for a twenty-day notice by mail to "the debtor, the trustee, all creditors" for a "hearing on the dismissal of the case or the conversion of the case to another chapter."

24.  Here, Condal entities served the Motion only upon the Debtors' attorney by electronic mail on February 14, or 16 days before the hearing scheduled for March 2, 2011. Not only did the Condal entities fail to provide sufficient notice in terms of timing and manner, they also failed to serve the Motion upon other parties-in-interest (including other creditors).

25.  This egregious failure to provide sufficient notice warrants, and may in fact compel, outright denial of Condal entities' Motion on purely procedural grounds.

### B. "CAUSE" DOES NOT EXIST UNDER 11 U.S.C. § 362(d)(1) FOR RELIEF FROM THE AUTOMATIC STAY

26.  Condal entities argue that Debtors' failure to pay current month's rent on the Premises constitutes "cause" for relief from automatic stay and cites a case for that proposition. However, upon a closer review, the cited case does not fully support Condal entities' argument. In the cited case, In re Taylor, 1997 WL 642559 (S.D.N.Y. Oct. 16, 1997), the rent arrears were much more extensive than one month and stemmed from an expired lease. Further, and more significantly, the Taylor court did not actually consider rent arrears as basis for dismissing the case.

27. Further, the Debtors are currently up-to-date on their operating reports although they are not technically "operating" at this time. As such, this likewise does not provide basis for granting relief from automatic stay.

28. Moreover, the Court is free to fashion a remedy other than vacating the stay, including modifying or conditioning the lifting of the stay on various future events. <u>In re Global One, L.L.C.</u>, 411 B.R. 524 (Bankr. M.D. Ga. 2009); <u>In re The Terraces Subdivision, LLC</u>, 2007 WL 2220448 (Bankr. D. Alaska 2007); <u>In re Planet 10</u>, 213 B.R. 478 (Bankr. E.D. Va. 1997); <u>In re Archway Apartments, Ltd.</u>, 206 B.R. 463 (Bankr. M.D. Tenn. 1997). This alternative remedy may, for example, condition a future lifting of the stay upon result of Debtors' appeal from city court judgment which this Court will hopefully permit by granting Debtors relief from the automatic stay.

29. Further, should this Court be inclined to grant Condal entities' motion for relief from the automatic stay, the Debtors ask that they be provided with time to conduct a sale of the equipment, furniture, and fixtures currently located at the Premises and rightfully belonging to the Debtors.

### B. THERE IS NO BASIS TO LIFT THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)(2)

30. Although Condal entities reference section 362(d)(2) of the Bankruptcy Code in the Motion, they do not appear to make any arguments geared specifically to that section. Despite this glaring and quizzical oversight, the Debtors feel compelled to discuss the proper standard for granting relief from automatic stay under that section.

31.     Under familiar principles, section 362(d)(2) of the Bankruptcy Code permits the stay to be modified with respect to specific property if "(A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization."

32.     As set forth in the Plan of Reorganization filed recently by the Debtors, the Debtors are anticipating being able to carry out a liquidating plan which includes resolving the dispute related to the Lease in the court(s) of appropriate jurisdiction. The Debtor is preserving all of its rights against Condal entities and is also about to commence a fraudulent conveyance action against the Condal entities.

### C. DISMISSAL OR CONVERSION IS NOT WARRANTED

33.     The Motion's basis for dismissal or conversion—Debtors' failure to keep up to date on operating reports—has been addressed with the Debtors now being current on their operating reports filings. Therefore, such drastic remedies as either dismissal or conversion should not be granted by this Court on this basis.

34.     Condal entities' only other basis for dismissal or conversion—Debtors' failure to provide proof that appropriate insurance is maintained—is likewise unavailing as the Debtors are in the process of obtaining copies of all relevant documentation and will be providing same to the Condal entities in a timely manner.

### D. RELIEF FROM AUTOMATIC STAY SHOULD BE GRANTED TO ALLOW THE DEBTORS TO PURSUE AN APPEAL OF STATE COURT JUDGMENT

35.     Attempting to fulfill an express condition set by this Court, the Debtors are seeking relief from the automatic stay in order to permit them to pursue an

appeal of the April 26, 2010 Judgment. In accord with this Court's decision, the Debtors sought an order vacating the April 26, 2010 Judgment, but were denied. At this point, Debtors would like to exercise their due process right to appeal and challenge the April 26, 2010 Judgment.

36. Since the Debtors are defendants in the underlying civil court action, an appeal of the judgment is technically stayed by the instant bankruptcy case regardless of whether the Debtors are the appellants. Pursuant to section 362(a)(1) of the Bankruptcy Code, the stay operates to bar "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title ...."

37. In the context of pending appeals at the time of a bankruptcy involving a debtor, the Second Circuit has explained "whether an action is 'against the debtor' is determined by examining the debtor's status at the time proceedings were initiated, and not by looking to which party has appealed." Ostano Commerzanstalt v. Telewide Systems, Inc., 790 F.2d 206, 207 (2d Cir. 1986); In re Capgro Leasing Associates, 169 B.R. 305, 311 (Bankr. E.D.N.Y. 1994) ("Where the action was initiated against the debtor, no party to the action may appeal absent relief from the automatic stay. Because no entity, including a debtor, may limit or waive the stay, nor appeal during the stay's pendency, the only option is to obtain relief from the stay, and this may only be sought from the bankruptcy judge").

12

38.     Mindful of this line of cases, the Debtors hereby respectfully seeks relief from the automatic stay so that they may pursue an appeal of the April 26, 2010 Judgment.

39.     Although this request does not implicate traditional notions of "cause," the analysis should involve a weighing of the benefits of the appeal, as compared to the costs. On this score, ample reason exists to grant relief from the automatic stay since the appellate process will provide the Debtors with means to attempt to fulfill an express condition contained in this Court's August 31, 2010 Order. Indeed, the Debtor has little to lose at this point and much to gain by an appeal and hopefully a reversal.

40.     Moreover, the Debtors should not lose their due process right of appeal merely because they sought Chapter 11 relief.

41.     Conversely, the costs of the appellate process are relatively small at this point, particularly in light of the fact that Condal entities themselves have sought and are currently seeking their own appeals.

WHEREFORE, for all of the reasons advanced throughout, Condal entities' Motion should be denied and Debtors' Motion should be granted consistent with the foregoing, together with such other and further relief as is just and proper.

Dated: New York, New York
February 25, 2011

> GOLDBERG WEPRIN
> FINKEL GOLDSTEIN LLP
> *Attorneys for the Debtors*
> 1501 Broadway, 22nd Floor
> New York, New York 10036
> (212) 221-5700
>
> By: _____
> Neal M. Rosenbloom (NMR-5465)

TO:

Joseph A. Altman, Esq.
Joseph A. Altman, P.C.
951 Bruckner Blvd.
Bronx, New York 10459

Office of United States Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004
<u>Attn</u>: Andrea B. Schwartz

Parties who filed Notice of Appearance

H:\Dominique\word\CLIENTS\2300 XTRA WHOLESALERS, INC\Opposition to Lift Stay Mtn with cross-motion (2.25.11 v.2).doc