UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

In re:

2300 XTRA Wholesalers, Inc. et al.[1]

                            Debtors

Chapter 11

Case No. 10-12280 (ALG)

Jointly Administered

------------------------------------------------------------------X

**REPLY OF CONDAL DISTRIBUTORS INC. AND CONDAL IMPORTS INC. IN SUPPORT OF MOTION BY CONDAL DISTRIBUTORS INC. AND CONDAL IMPORTS INC. FOR (A) RELIEF FROM THE AUTOMATIC STAY, (B) DISMISSAL (OR CONVERSION TO CHAPTER 7) OF THE ABOVE CAPTIONED DEBTORS' CHAPTER 11 CASES FOR THEIR FAILURE TO FILE OPERATING REPORTS AND FAILURE TO PRODUCE EVIDENCE OF INSURANCE AND/OR (C) ACCESS TO THE <u>PREMISES (defined below)</u>**

Condal Distributors Inc. and Condal Imports Inc. (collectively, the "<u>Owner</u>") hereby submit this reply (the "<u>Reply</u>") in support of the Owner's motion [D.I. Nos. 95 and 96] (the "<u>Motion</u>") for the entry of an order (a) pursuant to Sections 362 (d)(1) and (2) of the Bankruptcy Code modifying the automatic stay to permit the Owner to exercise its state law remedies with respect to the Lease, the Premises and the Debtors, (b) for dismissal (or conversion to chapter 7) of the above captioned Debtors' chapter 11 cases for their failure to file operating reports and failure to produce evidence of insurance and/or (c) access to the Premises. In support thereof, the Owner respectfully represents as follows:

       1.    Owner admits that there are issues with serving all notice parties. The Owner did not serve a copy of the Motion upon the only other notice party in these chapter 11 cases, State of New York, Department of Taxation and Finance and the Office of the United States Trustee - each, however, received ECF notification of the Motion. Debtors' counsel was served via e-mail

---

[1]     The Debtors are 2300 XTRA Wholesalers, Inc. ("<u>2300</u>") and Randall Meat Market, Inc. ("<u>Randall</u>")

1

in compliance with General Order M-399 of this Court. The Motion was initially filed on February 11, 2011 and amended on February 14, 2011 and the relief for dismissal relating to the February 14, 2011 filing is indeed on less than 20 days' notice from February 14, 2011 (although it was also requested on February 11, 2011). The opposition deadline was February 23, 2011.

2. The Owner submits that rather than have this Court deny the Motion on these harmless procedural grounds, if necessary, the Owner will re-notice the Motion to correct any such procedural flaws (even if harmless), which the Owner submits were unintentional.

3. Clearly, the Owner's chance of getting payment on the monetary amount of the Judgment of Possession (defined below) and other arrears and damages under the Lease[2] are more in bankruptcy proceedings, so dismissal request is an alternative request and it may be beneficial if the cases were either converted to chapter 7 or a chapter 11 trustee were to be appointed. The Owner preliminarily wants is either relief from stay and possession of its Premises or a mandate that the Debtors should pay rent while they try to exhaust their remedies with respect to the Judgment of Possession - but such attempts should be coupled with reasonable limitations.[3]

4. We have Debtors who:

(a) have failed to pay "rent" due under the Lease in which they claim an interest;

(b) have, to date, failed to produce any evidence that they have and continue to maintain insurance;

---

[2] Owner is the owner of the premises located at 2300 Randall Avenue, Bronx, New York (the "Premises"). The Premises are a single story commercial building with no residential units. The Owner and 2300 entered into a real property lease (as amended, the "Lease") for the Premises in April 1992. A copy of the Lease (as amended) is annexed hereto as **Exhibit A**.

[3] The problem with all this always was and remains is that the time permitted by statute (i.e. Bankruptcy Code section 365(d0(4) for the Debtors to assume or assume and assign the Lease has expired and the Lease has not (and cannot be assumed). Thus it is unclear whether there is any benefit to vacating the Judgment of Possession and/or the continued refusal to turn over the Premises to the Owner.

2

(c) have engaged non-ordinary course transactions and obtained post-petition credit/contribution without Bankruptcy Court approval;

(d) have failed to collect upon their sole asset - a mortgage note - and have failed to accurately describe it in their schedules;

(e) have failed to file their federal income tax returns (and perhaps state and local income tax returns) since 2003 or 2004;

(f) have probably failed to maintain DIP operating accounts; and

(g) have failed to maintain the Premises in which they claim a leasehold interest.

5. On February 25, 2011 the Debtors filed opposition papers (the "Opposition"), which also serve as a cross-motion to vacate the automatic stay to appeal the final judgment of possession (the "Judgment of Possession") issued in favor of Condal on April 26, 2010 by the Civil Court of the City of New York, County of Bronx ("New York Civil Court"). The Sale Order (defined below) (entered on August 31, 2010) required the Debtors to obtain relief in New York state courts from the Judgment of Possession. Thus the need for a new motion, six-months after the entry of the Sale Order, to vacate the stay is unclear. In addition, the Debtors ultimately filed an order to show cause with the New York Civil Court, seeking to vacate the Judgment of Possession, on October 4 or 6, 2010 - why they waited for over one-month, after the entry of the Sale Order, is also unclear. On January 3, 2011, the New York Civil Court refused to vacate the Judgment of Possession that was entered after trial on the merits. It is unclear whether the Debtors are appealing this January 3, 2011 order.

6. The Owner recognizes and understands the directive of this Court in prior orders, including this Court's order dated August 31, 2010 [D.I. No. 65] (the "Sale Order"), granting the Debtors' application to (a) approve sale of debtors' assets and (b) approve assumption and

3

assignment of unexpired lease of real property, which directed the Debtors to seek relief from the Judgment of Possession from New York state courts. It is true that the Owner has appealed the Sale Order and the order denying Owner's motion to vacate the stay in which this Court held that the Lease did not terminate pre-petition [D.I. No. 57]. The Owner should not be chastised for appealing such orders or otherwise seeking to protect its rights. If that were the case, the Debtors should be chastised for various actions (some discussed below), including (a) 2300's filing of the bankruptcy case after the Judgment of Possession was entered, (b) commencing an adversary proceeding on or about February 25, 2011 against the Owner in which the Debtors are basically seeking to once again re-litigate issues (claiming that the entry of the Judgment of Possession to be a fraudulent conveyance) related to the entry of the Judgment of Possession (this after they initially sought to remove the underlying landlord/tenant action to the United States District Court for the Southern District of New York)[4] and (c) sitting on their purported rights for extended periods of time even after this Court instructed them on many occasion to address the Judgment of Possession in New York State courts.

7. Owner has not taken any action in violation of the Bankruptcy Code, it has in all instances initially come to this Court. It is also true that at the Honorable Court's direction and Debtors' urging, the Owner agreed to and sat down with Bogopa. But discussions faltered and Bogopa terminated its contract with the Debtors.

8. This Court is privy to the landlord/tenant saga that has been going on since 2008 when 2300 attempted to sub-let the premises to OJ Resources. The Owner objected to such subletting absent proof of financial wherewithal of OJ Resources - a right that was upheld by the Supreme Court of the State of New York. Rather than provide financial information, 2300

---

[4] Owner reserves all rights in this regard.

4

granted OJ Resources the right to operate a supermarket at the premises pursuant to the terms of a management agreement. As this Court already knows, OJ Resources almost immediately defaulted under the terms of the management agreement between it and 2300.

9. Then there is the February 24, 2009 stipulation between the Owner and the Debtors, which, among other things, required the Debtors to: (a) on or before May 31, 2009 evict OJ Resources from the Premises; (b) obtain a certificate of occupancy for the intended use of the Premises as a first class supermarket; (c) on or before May 31, 2009 repair and maintain the roof of the Premises; (d) pay rent when due; and (e) cure other substantial defaults under the Lease many of which were required to be cured on or before May 31, 2009. The February 24, 2009 stipulation required the Debtors to, on or before March 31, 2009, provide to the Owner a complete set of architectural plans, electrical/engineering plans and scope of work to be performed along with a timeline of work to be performed. Debtors also agreed to pay all rent in a timely manner.

10. But the Debtors defaulted under the terms of the Lease (and the February 24, 2009 stipulation), including failing to perform the obligations under, and in accordance with, the February 24, 2009 stipulation. The transcript from the New York Civil Court proceedings (which is long and has been submitted to this Court (see D.I. No. 27)) clearly shows that the Debtors simply did not do any of the things they agreed to do. In connection with these monetary and non-monetary defaults, on August 12, 2009, the Owner in compliance with the Lease and applicable law, served a "Ten Day Notice of Termination", which terminated the Lease on and as of September 10, 2009. Yet the Debtors refused to turn over possession, thus another set of litigation ensued and after trial on the merits, the Judgment of Possession was entered. The Judgment of Possession relates to defaults most of which are non-monetary and

5

many of which effect health and safety of the Premises. Yet, the Owner is not allowed access to the Premises and the Debtors have simply refused to maintain the Premises. This is clearly not what is intended by Bankruptcy Code section 362.

11. In response to the Motion, the Debtors filed their operating reports [D.I. Nos. 97 - 105] (the "Operating Reports") for the period of May 17, 2010 through and including January 31, 2010. Copies of the Operating Reports are annexed hereto as **Exhibit B**.

12. A simple review of the Operating Reports also supports the relief requested in the Motion. The Operating Reports indicate that during the period May 17, 2010 through and including January 31, 2010 the Debtor, 2300 purportedly received monies from its sole shareholder in the approximate amount of $252,599.00. Unless 2300 is in the business of receiving such funds, this is a non-ordinary course transaction and is not of the type allowable under 11 U.S.C. § 503(b)(1) and under 11 U.S.C. § 364 requires notice and hearing for approval thereof. A review of the docket of the Debtors' chapter 11 cases reveals no such request.

13. In addition to receiving monies from the shareholder, 2300 purportedly collected $76,895 on account of the $1,700,000 outstanding mortgage loan in its favor. The April 29, 2010 affidavit of Pedro Bello, the Debtors' comptroller [D.I. No. 1] (the "Bello Affidavit") who also executed the Operating Reports reveals that the mortgagee is required to make monthly payments of $15,379 per months, as such for the nine monthly periods after 2300's April 29, 2010 petition date through January 31, 2011, 2300 should have collected $138,411 from the mortgagee. Publicly available copy of the mortgage is attached hereto as **Exhibit C.** Clearly, there is a mortgage collection shortfall of $61,516 through January 31, 2011 alone. A review of 2300's schedules reveals that it has listed its assets as $0. This is another evidence of mismanagement of the Debtors' affairs.

6

14. The Operating Reports also show that the Debtors have no operations and no business and it is unclear whether since April 29, 2010 the Debtors have made any insurance payment, utility payment, whether they have maintained a debtor-in-possession bank account or whether they have paid any salaries or payment on account of other services performed for them.

15. It is also unclear whether the Debtors filed their tax returns. What is clear is that the Internal Revenue Service has asserted a claim in the amount of $368,076.95 and asserted that no tax returns for tax periods ending 1/31/2004 though and including 1/31/2009 have been filed.

16. It also appears that the Debtors do not have any DIP Operating account. In the February 17, 2007 disclosure statement [D.I. No 107] (the "Disclosure Statement"), the Debtors represent that their counsel (although to date there is no retention order) is holding $250,000 the Debtors received from OJ Resources. *See* Disclosure Statement p. 1. Yet it is impossible to gather from the Debtors' schedules that they are holding any such cash.

17. On February 17, 2011, 2300 filed a plan (D.I. No. 106) (the "Plan") and the related Disclosure Statement.[5] No plan or disclosure statement has been submitted on behalf of the Debtor, Randall Meat Market, Inc.

18. The Plan is a liquidating Plan and in Section 7.1 of the Plan, the Debtor, 2300 provides: "All remaining executory contracts, if any, of [2300] are hereby deemed rejected for purposes of 11 U.S.C. § 365 to the extent they have not previously been assumed. All litigation between the Debtor [, 2300] and Condal to determine their rights under the April, 1992 lease shall continue in court(s) of appropriate jurisdiction." *Plan* § 7.1. In the Disclosure Statement, the Debtor, 2300 represents: "The Debtor does not believe that any executory contracts exist. However, in an abundance of caution, the Plan provides for the rejection of all executory

---

[5] All rights with respect to the Plan and the Disclosure Statement are preserved. There is no motion seeking the approval of the disclosure statement so an appropriate objection will be filed at that time and when it and/or the Plan are presented.

7

contracts and unexpired leases; however, all litigation concerning the lease for its **former business premises** at 2300 Randall Avenue, Bronx, New York will be determined in a court of appropriate jurisdiction." *Disclosure Statement* p. 12. (emphasis added)

19.     If the Plan is a liquidating plan and all leases and executory contracts are to be rejected why the Debtors seek to incur substantial administrative claims and refuse to turn over the Premises (i.e. their former business premises) is unclear.

20.     The fact is that the Debtors do not dispute that they have failed to pay base rent as set forth in the Lease for February 2011 and will fail to pay same for March 2011. In fact, it appears from their Opposition that the Debtors have no intention of paying any rent; notwithstanding the fact that this Court has previously directed the Debtors to pay rent in a timely manner.

21.     It is also clear that, to date, the Debtors have failed to present any evidence of insurance. What if someone slips and falls outside the premises (especially since the Debtors are clearly not maintaining them)? This will result in an administrative claim against the Debtors.

22.     This Court has made it clear in *In re Stone Barn Manhattan LLC*, 398 B.R. 359 (Bankr. S.D.N.Y. 2008) that the requirement to pay rent is mandatory. "As this Court has observed, many courts 'have found 503(b)(1) to be superseded by 365(d)(3); to hold otherwise would flout the intent of Congress in that the landlord would still be forced to provide current services while awaiting an evidentiary hearing to determine the actual amount the debtor owed it.'" *Id.* at 362, *citing In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392, 397 (Bankr. S.D.N.Y. 2001). In P.J. Clarke's, this Court held that a debtor that wishes to purse remedies with respect to a lease - even one that terminated prepetition - must comply with the requirement to timely perform all obligations under a lease. *See In re P.J. Clarke's Restaurant Corp.*, 265 B.R. at 401

8

("Accordingly, since the 1984 Amendments were adopted, courts have specifically conditioned a debtor's right to pursue State court remedies on payment of rent at the lease rate-but not at a higher rate. *See In re Joker Enterprises, Inc.,* 1995 WL 626372 (Bankr. S.D.N.Y. 1995) (the court conditioned the debtor's right to seek vacatur of the warrant of eviction in the State court on payment of the lease rate rent pursuant to § 365(d)(3)); *In re BKB Ent.,* 97 B.R. 170 (Bankr. S.D.N.Y. 1989) (the court conditioned the stay pending appeal on payment of rent)." Payment default under a lease is "cause" requiring relief from automatic stay. *See In re Rocchio*, 125 B.R. 345, 347 (Bankr. R.I. 1991) (failure of debtor to pay post-petition rent, together with lack of evidence to show ongoing compliance with Lease terms, constituted "cause" under § 362(d)(1) to vacate automatic stay). In addition, this Court in *In re P.J. Clarke's* held that adequate protection requirements of Bankruptcy Code 362(d)(1) require payment of rent and performance of other obligations under the Lease. *See P.J. Clarke's Restaurant Corp.*, 265 B.R. at 404 - 406.

23. The Lease requires that base rent at the rate of $26,481 per month is to be paid on the first day of each month. Despite sending a reminder to the Debtors' counsel that base rent when due was not paid, to date, payment of the base rent for the month of February 2011 has not been made. Yet the Disclosure Statement in estimating administrative claims does not take into account any required rent payment. What the Disclosure Statement reveals that 2300 believes that the $1.7 million mortgage, the $250,000 from OJ Resources and $250,000 from Bogopa is sufficient to pay all creditors in full with interest. *See* Disclosure Statement p. 2.

24. Since the Plan is a liquidating Plan and provides for rejection of all contracts and leases, no rent has been paid and the $1.7 million mortgage asset and $500,000 cash is sufficient to pay creditors in full, the time has come to require the Debtors to turn over possession of the premises to Condal. The Bankruptcy Code grants this Court the authority to require the Debtors

to turn over possession of the premises under 11 U.S.C. 365(d)(4)(A): "the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of . . ." This is exactly what this Court told the Debtors on August 5, 2010. *See* **Exhibit D** (August 5, 2010 Hr'g Tr., 20:8-23 ("the Bankruptcy Code that limits . . . debtor's initial period of time to assume or reject a nonresidential real property lease to four months from the petition date. The Court can extend that time once for up to three months for cause shown. After that, the Court cannot extend the time. That was one of the statutory amendments that the landlords obtained in a recent amendment to the Bankruptcy Code. Parties can agree to put off the date . . . [b]ut that can only be done with the landlord's written consent."). Here, the applicable initial 120 day and any available additional 90 day time period under Bankruptcy Code section 365(b)(4) expired on and as of November 25, 2010 and the Owner has never consented to any extension, thus turnover is proper remedy.[6]

25. This Court should also consider conversion to chapter 7 or the appointment of a trustee or other responsible party who can liquidate the Debtors assets (including selling the $1.7 million mortgage which is a first mortgage against property that has at least one junior mortgage on it) and pay creditors in full before it is too late and administrative expenses substantially diminish the potential recoveries available to creditors.

26. As a result cause exists to grant the relief from the automatic stay and perhaps other relief requested in the Motion.

---

[6] The only extension of the initial 120-day period that the Debtor, 2300 XTRA Wholesalers, Inc. requested and received was through August 31, 2010. It made no other extension request and the Debtor, Randall Meat Market, Inc. never made any extension request.

Dated:  February 28, 2011
       Bronx, New York

**Joseph A. Altman, P.C.**

By: /s/ Joseph A. Altman
  Joseph A. Altman
  951 Bruckner Blvd.
  Bronx, New York 10459
  Phone:  718-328-0422

Counsel for Condal Distributors Inc. and Condal Imports Inc.