Joseph A. Altman, P.C.
Counsel to Condal Distributors Inc.
and Condal Imports Inc. (collectively, the "Plan Proponent")
Joseph A. Altman, Esq.
951 Bruckner Blvd.
Bronx, New York 10459
Phone: 718-328-0422

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:                                                          : Chapter 11
                                                                :
2300 XTRA Wholesalers, Inc. et al.[1]                           :
                                                                : Case No. 10-12280 (ALG)
                          Debtors                               :
-----------------------------------------------------------------X


DISCLOSURE STATEMENT OF THE PLAN PROPONENT
DATED JUNE 17, 2011 IN CONNECTION WITH THE
PLAN PROPONENT'S PLAN OF LIQUIDATION

---

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCE OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

---

Bronx, New York
June 17, 2011

---

[1] The debtors are 2300 XTRA Wholesalers, Inc. (Case No. 10-12280) ("2300") and Randall Meat Market, Inc. (Case No. 10-12915) ("Randall" and together with 2300, each a "Debtor" and collectively, the "Debtors")

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 4

II. SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS ................. 5

III. VOTING ON AND CONFIRMATION OF PLAN ........................................................ 5

    A. General ......................................................................................................................... 5
    B. Acceptance of the Plan ................................................................................................. 6
    C. Voting Procedures and Requirements .......................................................................... 6
    D. Confirmation Hearing .................................................................................................. 7
    E. Confirmation Requirements ......................................................................................... 8
        1. Feasibility .......................................................................................................... 8
        2. "Best Interests"; Liquidation Analysis ............................................................. 9
        3. Cramdown ....................................................................................................... 10
            (a) No Unfair Discrimination ...................................................................... 10
            (b) Fair and Equitable Test .......................................................................... 10
                (i) Secured Claims .............................................................................. 10
                (ii) Unsecured Claims .......................................................................... 10
                (iii) Interests .......................................................................................... 11
    F. Alternatives to Confirmation and Consummation of the Plan ................................... 11

IV. BACKGROUND AND THE CHAPTER 11 CASES ................................................... 12

    A. Ownership, Assets and Liabilities of the Debtor ....................................................... 12
    B. Events Leading To Chapter 11 Filing and Relevant Events During the Chapter 11
       Cases ........................................................................................................................... 12

V. SUMMARY OF THE PLAN ............................................................................................ 13

VI. CONCLUSION ................................................................................................................... 13

Condal Distributors Inc. and Condal Imports Inc. (collectively, the "Plan Proponent"), a creditor and a party in interest in the above-captioned Debtors' chapter 11 cases (each a "Chapter 11 Case" and collectively, the "Chapter 11 Case"), hereby proposes and files this disclosure Statement (the "Disclosure Statement") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), pursuant to Section 1125 of Title 11, United States Code (the "Bankruptcy Code"), in connection with the Plan Proponent's proposed Plan of Liquidation dated June 17, 2011 (as it may be amended, altered, modified or supplemented as described herein, the "Plan"). A copy of the Plan is annexed to this Disclosure Statement as **Exhibit A** and is incorporated herein by reference. All capitalized terms shall have the meanings ascribed to them in the Plan.

Although the Debtors have filed their plans and disclosure statements, they have not yet been able to proceed to confirmation on the Chapter 11 Cases. The exclusive period in each of the Debtors' Chapter 11 Case has expired and it is the Plan Proponent's position that the Debtors' Chapter 11 Cases are being run to satisfy personal needs of the Debtors' management and equity security holders rather than for the benefit of the Debtors' Estates and Holders of Claims against the Debtors' Estates. In addition, it is the Plan Proponent's position that the estates are being wasted and the most important asset of the Estates; i.e. the Mortgage and Note remain uncollected. Accordingly, to move the Chapter 11 Cases forward, the Plan proponent files the accompanying Plan. Contained herein is the Plan proposed by the Plan Proponent, a creditor and party interest in each of the two (2) Chapter 11 Cases. It the Plan Proponent's belief that this Plan is the best alternative given the circumstances of the Chapter 11 Cases.

The Plan provides a means by which the Debtor's Estate will be liquidated under Chapter 11 of the Bankruptcy Code, and sets forth treatment of all Claims against and Interests in the Debtors.

The Plan Proponent believes that liquidation of the Estates in accordance with the Plan would provide the best possible result for all Holders of Claims against the Debtors.

**THE PLAN PROPONENT BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RESULT FOR ALL HOLDERS OF CLAIMS AND INTERESTS AND THEREFORE BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTORS' CREDITORS AND INTEREST HOLDERS. THE PLAN PROPONENT STRONGLY URGES ALL HOLDERS OF CLAIMS IN THE IMPAIRED CLASS RECEIVING BALLOTS THAT ARE ENTITLED TO VOTE ON THE PLAN TO VOTE TO ACCEPT THE PLAN.**

**THIS DISCLOSURE STATEMENT IS DESIGNED TO SOLICIT YOUR ACCEPTANCE OF THE ATTACHED PLAN AND CONTAINS INFORMATION RELEVANT TO YOUR DECISION. PLEASE READ THIS DISCLOSURE STATEMENT, THE PLAN AND THE OTHER MATERIALS COMPLETELY AND CAREFULLY. THE PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, OTHER EXHIBITS ANNEXED HERETO AND OTHER DOCUMENTS REFERENCED AS FILED WITH THE BANKRUPTCY COURT BEFORE OR CONCURRENTLY WITH THE FILING**

OF THIS DISCLOSURE STATEMENT AND THE PLAN. FURTHERMORE, THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN THE SUBJECT OF AN AUDIT. SUBSEQUENT TO THE DATE HEREOF, THERE CAN BE NO ASSURANCE THAT: (A) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN WILL CONTINUE TO BE MATERIALLY ACCURATE; OR (B) THE DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.

THE ONLY CLASS OF CLAIMS IMPAIRED UNDER THE PLAN AND ENTITLED TO VOTE ON THE PLAN IS CLASS 2 (GENERAL UNSECURED CLAIMS). CLASS 1 (SECURED CLAIMS) IS UNIMPAIRED AND HOLDERS OF SUCH CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE ACCEPTED THE PLAN PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE. CLASS 3 (INTERESTS) ARE IMPAIRED, BUT WILL NEITHER RECEIVE NOR RETAIN ANY INTEREST IN THE DEBTORS NOR RECEIVE ANY DISTRIBUTION FROM THE DEBTORS' ESTATES ON ACCOUNT OF THEIR INTERESTS AND ARE DEEMED TO NOT TO HAVE ACCEPTED (*i.e.*, TO HAVE REJECTED) THE PLAN PURSUANT TO SECTION 1126(g) OF THE BANKRUPTCY CODE.

HOLDERS OF CLASS 2 (GENERAL UNSECURED CLAIMS) ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT PRIOR TO SUBMITTING BALLOTS. IN MAKING A DECISION TO ACCEPT OR REJECT THE PLAN, EACH HOLDER OF A CLASS 2 GENERAL UNSECURED CLAIM MUST RELY ON ITS OWN EXAMINATION OF THE DEBTORS' SCHEDULES AND THE TERMS OF THE PLAN, INCLUDING THE MERITS AND RISKS INVOLVED. IN ADDITION, CONFIRMATION AND CONSUMMATION OF THE PLAN ARE SUBJECT TO CONDITIONS PRECEDENT THAT COULD LEAD TO DELAYS IN CONSUMMATION OF THE PLAN. THERE CAN BE NO ASSURANCE THAT EACH OF THESE CONDITIONS WILL BE SATISFIED OR WAIVED (AS PROVIDED IN THE PLAN) OR THAT THE PLAN WILL BE CONSUMMATED EVEN AFTER THE EFFECTIVE DATE. DISTRIBUTIONS UNDER THE PLAN MAY BE SUBJECT TO SUBSTANTIAL DELAYS FOR HOLDERS OF CLAIMS THAT ARE DISPUTED.

CLASS 2 WILL BE DEEMED TO HAVE ACCEPTED THE PLAN IF THE HOLDERS OF CLAIMS IN EACH SUCH CLASS WHO CAST VOTES IN FAVOR OF THE PLAN HOLD AT LEAST TWO-THIRDS IN DOLLAR AMOUNT AND MORE THAN ONE-HALF IN NUMBER OF THE ALLOWED CLAIMS THAT ARE HELD BY HOLDERS OF CLAIMS ACTUALLY VOTING IN SUCH CLASS. IF THERE IS ONE CLAIMANT IN A CLASS, A VOTE BY SUCH CLAIMANT WILL BE DEEMED TO CARRY THE CLASS AND SATISFY THE REQUIREMENTS OF SECTION 1126 OF THE BANKRUPTCY CODE.

WITH RESPECT TO ANY IMPAIRED CLASS THAT DOES NOT ACCEPT THE PLAN, THE PLAN PROPONENT WILL REQUEST THAT THE BANKRUPTCY COURT CONFIRM THE PLAN UNDER BANKRUPTCY CODE SECTION 1129(b). SECTION 1129(b) PERMITS CONFIRMATION OF THE PLAN DESPITE REJECTION

BY ONE OR MORE CLASSES IF THE BANKRUPTCY COURT FINDS THAT THE PLAN "DOES NOT DISCRIMINATE UNFAIRLY" AND IS "FAIR AND EQUITABLE" AS TO THE CLASS OR CLASSES THAT DO NOT ACCEPT THE PLAN. FOR A MORE DETAILED DESCRIPTION OF THE REQUIREMENTS FOR ACCEPTANCE OF THE PLAN AND OF THE CRITERIA FOR CONFIRMATION, SEE ARTICLE III HEREIN, FOR CONFIRMATION REQUIREMENTS.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS WITH RESPECT TO THE PLAN OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT. NO REPRESENTATIONS OR INFORMATION CONCERNING THE PLAN PROPONENT, THE DEBTORS, THE ESTATES OR THE VALUE OF DEBTORS' PROPERTY HAVE BEEN AUTHORIZED OTHER THAN AS SET FORTH HEREIN.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH OTHER APPLICABLE NON-BANKRUPTCY LAWS. ENTITIES HOLDING, TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, OR INTERESTS IN THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.

IF THE REQUISITE ACCEPTANCES OF THE PLAN ARE RECEIVED, THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS OR INTERESTS (INCLUDING THOSE WHO DO NOT SUBMIT BALLOTS ACCEPTING OR REJECTING THE PLAN) WILL BE BOUND BY THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF AND NEITHER THE DELIVERY OF THIS DISCLOSURE STATEMENT NOR ANY DISTRIBUTION OF PROPERTY PURSUANT TO THE PLAN WILL UNDER ANY CIRCUMSTANCES CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF OR THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH HEREIN OR IN THE AFFAIRS OF THE DEBTOR SINCE THE DATE HEREOF.

THE PLAN PROPONENT IS NOT AN INSIDER AND DOES NOT HAVE ACCESS TO THE DEBTORS' BOOKS AND RECORDS; ACCORDINGLY, THE INFORMATION CONTAINED HEREIN IS LIMITED TO THAT WHICH IS PUBLICLY AVAILABLE TO THE PLAN PROPONENT AND THE PLAN PROPONENT HAS NOT UNDERTAKEN AN INVESTIGATION TO VERIFY THE ACCURACY OF SUCH INFORMATION.

EACH CREDITOR AND INTEREST HOLDER OF THE DEBTOR SHOULD CONSULT WITH THEIR LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY

SUCH MATTERS CONCERNING THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN, THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

## I. INTRODUCTION

This Disclosure Statement is being furnished by the Plan Proponent pursuant to Section 1125 of the Bankruptcy Code, in connection with the solicitation of Ballots to accept or reject the Plan from Class 2 (General Unsecured Claims). The following introduction and summary is qualified in its entirety by, and should be read in conjunction with, the more detailed information, financial statements and notes appearing elsewhere in this Disclosure Statement.

On or about June 17, 2011, the Plan Proponent filed the Plan with the Bankruptcy Court. Concurrently therewith, the Plan Proponent filed this Disclosure Statement with the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code and in connection with the solicitation of Ballots to accept or reject the Plan (the "Solicitation").

On [___], 2011, the Bankruptcy Court determined that this Disclosure Statement contains "adequate information" in accordance with Section 1125 of the Bankruptcy Code. Pursuant to Section 1125(a)(1) of the Bankruptcy Code, "adequate information" is defined as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a)(1).

**The Bankruptcy Court has scheduled a hearing to consider confirmation of the Plan for [_____] at [__]:00 [_].m. (prevailing Eastern Time), before the Honorable Allan L. Gropper, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 617, New York, New 10004. The hearing may be adjourned from time to time without further notice other than by announcement in the Bankruptcy Court on the scheduled date of such hearing or any adjourned hearings thereof. Any objections to confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on counsel for the Plan proponent listed below to ensure RECEIPT by them on or before [_____]at 5:00 p.m. (prevailing Eastern Time). Counsel on whom objections must be served are:**

Joseph A. Altman, P.C.
Joseph A. Altman, Esq.
951 Bruckner Blvd.
Bronx, New York 10459
Phone: 718-328-0422

Attached hereto as Exhibits are copies of the following documents:

**Exhibit A:**   The Plan;

4

**Exhibit B**: Order of the Bankruptcy Court, dated [_____] (the "Solicitation Procedures Order"), among other things, approving this Disclosure Statement and establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan; and

**Exhibit C**: The Liquidation Analysis.

## II. SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS

THE SUMMARY OF THE PLAN'S CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ARE AS SET FORTH IN THE PLAN.

## III. VOTING ON AND CONFIRMATION OF PLAN

### A. General

Confirmation and consummation of a plan of reorganization or liquidation is the principal objective of a Chapter 11 case. A plan of reorganization or liquidation sets forth the treatment of claims against, and interests in a debtor. Confirmation of a plan of reorganization or liquidation by the Bankruptcy Court makes the plan binding upon the debtor, any person or entity acquiring property under the plan and any creditor of or interest holder in the debtor, whether or not such creditor or interest holder (1) is impaired under or has accepted the plan or (2) receives or retains any property under the plan.

In general, a plan divides the claims against, and interests in a debtor into separate classes and allocates plan distributions among those classes. If the legal, equitable and contractual rights of a class are unaffected by the plan, such class is considered "unimpaired." All unimpaired classes are deemed to have accepted the plan and, therefore, are not entitled to vote under Section 1126(f) of the Bankruptcy Code.

Section 1126(g) of the Bankruptcy Code, on the other hand, provides that all classes of claims and interests that do not receive or retain property under the plan on account of such claims or interests are deemed not to have accepted, or to have rejected the plan and are, likewise, not entitled to vote. All other classes of claims and interests are considered "impaired" and are entitled to vote to accept or reject the plan. Under the Bankruptcy Code, acceptance of the plan is determined by class; therefore, it is not required that each holder of a claim or interest in an impaired class vote in favor of the plan in order for the bankruptcy court to confirm the plan. Generally, each impaired class must vote to accept the plan; however, the bankruptcy court may confirm the plan in certain circumstances without the acceptance of all impaired classes if at least one (1) impaired class votes to accept the plan and certain other statutory tests are satisfied.

A further explanation of the requirements of confirmation if an impaired class rejects the plan is set forth below in this Disclosure Statement. Many of these tests are designed to protect the interests of creditors and interest holders who either do not vote or vote to reject

the plan, but who nonetheless would be bound by the plan if it is confirmed by the bankruptcy court.

B.   Acceptance of the Plan

As a condition to confirmation, Section 1129(a) of the Bankruptcy Code requires that: (a) each impaired class of claims or interests votes to accept the Plan; and (b) the Plan meets the other requirements of Section 1129(a) of the Bankruptcy Code. As explained above, classes that are unimpaired are deemed to have accepted a plan and, therefore, are not entitled to vote and classes that do not receive or retain any property under a plan are deemed to have rejected a plan and are likewise not entitled to vote. Accordingly, acceptances of the Plan are being solicited only from those parties who hold Claims in Impaired Classes that are to receive Distributions under the Plan. An Impaired Class of Claims will be deemed to have accepted the Plan if Holders of at least two-thirds in dollar amount and more than one-half in number of Claims in such Class that cast timely ballots vote to accept the Plan. If there is one Claimant in a Class, a vote by such Claimant will be deemed to carry the Class and satisfy the requirements of Section 1126(c) of the Bankruptcy Code.

Holders of Claims or Interests who do not timely vote on the Plan are not counted for purposes of determining acceptance or rejection of the Plan by any Impaired Class of Claims or Interests.

C.   Voting Procedures and Requirements

Pursuant to the Bankruptcy Code, only classes of claims against or equity interests in a debtor that are "impaired" under the terms of a plan of liquidation or reorganization, and who receive distributions under such plan, are entitled to vote to accept or reject the plan. Generally, a class is "impaired" under a plan unless such plan leaves unaltered the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest. Classes of claims and interests that are not impaired are not entitled to vote on the plan and are conclusively presumed to have accepted the plan.

Holders of Claims in Class 2 are entitled to vote on the Plan. If this Class votes to reject the Plan, the Plan may be modified or withdrawn.

Please carefully follow all of the instructions contained on the Ballot or Ballots provided to you with this Disclosure Statement if you are entitled to vote on the Plan. All Ballots must be completed and returned in accordance with the instructions provided.

To be counted, your Ballot or Ballots must be received by the Voting Deadline at the address set forth on the pre-addressed envelope provided to you. It is of the utmost importance to the Plan Proponent that you vote promptly to accept the Plan.

If you are entitled to vote and you did not receive a Ballot, received a damaged Ballot or lost your Ballot, please call counsel to the Plan Proponent. Also, this Disclosure Statement, the Plan and all of the related exhibits and schedules, are available, without charge, to any party in interest upon reasonable request to counsel to the Plan Proponent.

Votes cannot be transmitted orally, by facsimile, or by email. Accordingly, you are urged to return your signed and completed Ballot, by hand delivery, overnight service or regular U.S. mail, promptly, so that it is received by the Plan Proponent on or before the Voting Deadline.

D. <u>Confirmation Hearing</u>

The Bankruptcy Code requires the Bankruptcy Court, after proper notice to parties in interest, to hold a hearing on whether the Debtor has fulfilled the confirmation requirements of Section 1129 of the Bankruptcy Code. The Confirmation Hearing with respect to the Plan has been scheduled for [_____] [__], 2011 at [__]:00 a.m. (Eastern time) before the Honorable Allan L. Gropper, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 617, New York, New 10004. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing. Any objection to confirmation must be made in writing and must specify in detail the name and address of the objecting party, all grounds for the objection and the amount of the Claim or Interest held by the objecting party. Any such objections must be filed and served upon the persons designated in the notice of the Confirmation Hearing and in the manner and by the deadline described therein.

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the following requirements of Section 1129(a) of the Bankruptcy Code are met:

1. The Plan complies with the applicable provisions of the Bankruptcy Code.

2. The Plan Proponent has complied with the applicable provisions of the Bankruptcy Code.

3. The Plan has been proposed in good faith and not by any means forbidden by law.

4. Any payment made or to be made by the Plan Proponent, or by an entity issuing securities, or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Chapter 11 Case or in connection with the Plan and incident to the Chapter 11 Case has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable.

5. The Plan discloses the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a general partner, or a successor to the Debtor under the Plan, and the appointment to or continuance in such office by such individual must be consistent with the interests of Creditors and Interest Holders and with public policy.

6. With respect to each Impaired Class of Claims or Interests, each Holder of a Claim or Interest in such Class has either accepted the Plan or will

receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code.

7. With respect to each Class of Claims or Interests, such Class has either accepted the Plan or is Unimpaired by the Plan. If this requirement is not met, the Plan may still be confirmed pursuant to Section 1129(b) of the Bankruptcy Code.

8. Except to the extent that the Holder of a particular Claim or Interest has agreed to a different treatment of its Claim, the Plan provides that (a) Allowed Administrative Expense Claims will be paid in full in Cash on the later of (aa) the Effective Date, or (bb) in the event such Administrative Expense Claim is not Allowed as of the Effective Date, the date on which the Bankruptcy Court enters an order allowing such Administrative Expense Claim, or (cc) such later date as the Plan Proponent and the Holder of such Allowed Administrative Expense Claim otherwise agree in writing or as soon thereafter as is practicable; *provided, however*, expenses of the Plan Proponent's professionals, including without limitation, claims for fees generated by professionals in administering the Plan, shall not be subject to application and may be paid by the Plan Proponent in the ordinary course of business; and (dd) Allowed Priority Tax Claims will be paid in full in Cash on the later of (x) the Effective Date, or (y) in the event such Priority Tax Claim is not Allowed as of the Effective Date, the date on which the Bankruptcy Court enters an order allowing such Priority Tax Claim, or as soon thereafter as is practicable.

9. If a Class of Claims is Impaired under the Plan, at least one Class of Claims that is Impaired by the Plan has accepted the Plan, determined without including any acceptance of the Plan by any "insider."

10. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor of the Debtor under the Plan. All fees payable under Section 1930 of Title 28 as determined by the Bankruptcy Court at the Confirmation Hearing have been paid or the Plan provides for the payment of all such fees on the Effective Date.

The Plan Proponent believes that the Plan satisfies, to the extent applicable, all of the statutory requirements of Chapter 11 of the Bankruptcy Code. Certain of these requirements are discussed in more detail below.

E. <u>Confirmation Requirements</u>

1. <u>Feasibility</u>

8

In connection with confirmation of the Plan, Section 1129(a)(11) of the Bankruptcy Code requires that the Bankruptcy Court find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. This is the so-called "feasibility" test. The Plan envisions liquidation of all Property, along with Cash being deposited into the Escrow Account; thereafter, the Debtor will be deemed dissolved. Thus, confirmation of the Plan will not be followed by a liquidation or further reorganization. Accordingly, the Plan Proponent believes that the Plan complies with the standard of Section 1129(a)(11) of the Bankruptcy Code.

2.   "Best Interests"; Liquidation Analysis

In order to confirm the Plan, the Bankruptcy Court also must determine that the Plan is in the best interests of each Holder of a Claim or Interest in any such Impaired Class who has not voted to accept the Plan. Accordingly, if an Impaired Class does not accept the Plan as required under the Bankruptcy Code, the "best interests" test requires that the Bankruptcy Court find that the Plan provides to each member of such Impaired Class a recovery on account of the member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution that each such member would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date.

To estimate what members of each Impaired Class of Claims or Interests would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code, the Bankruptcy Court must first determine the aggregate dollar amount that would be available if the Chapter 11 Case were converted to a Chapter 7 case under the Bankruptcy Code and the Debtor's assets were liquidated by a Chapter 7 trustee (the "Liquidation Value"). The Liquidation Value of the Debtor would consist of the net proceeds received from the disposition by a Chapter 7 trustee of the Debtor's remaining assets and inventory plus any Cash held by the Debtor.

The Liquidation Value available to Holders of Claims or Interests that are not Secured Claims would be reduced by, among other things: (a) the Claims of secured creditors to the extent of the value of their collateral; (b) the costs, fees and expenses of the liquidation, as well as other administrative expenses of the Debtor's Chapter 7 case; (c) unpaid Administrative Expense Claims of the Chapter 11 Case; and (d) Priority Claims and Priority Tax Claims. The Debtor's costs of liquidation in Chapter 7 would include the compensation of a trustee, as well as, of counsel and of other professionals retained by such trustee, asset disposition expenses, applicable Taxes, litigation costs, Claims arising from the administration of the Debtor during the pendency of the Chapter 7 case and all unpaid Administrative Claims incurred by the Debtor during the Chapter 11 Case that are allowed in the Chapter 7 case.

The information contained in **Exhibit C** hereto provides a summary of the Liquidation Value of the Debtors' interests in Property, assuming a Chapter 7 liquidation in which a trustee appointed by the Bankruptcy Court would liquidate the Debtors' Property and interests. In summary, the Plan Proponent believes that Chapter 7 liquidation would result in diminution in the value to be realized by Holders of Allowed Claims, as compared to the proposed distributions under the Plan. Consequently, the Plan Proponent believes that the Plan will provide a greater ultimate return to Holders of Allowed Claims than would a Chapter 7 liquidation of the Debtors.

3. <u>Cramdown</u>

In the event that any Impaired Class of Claims or Interests does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan if all other requirements under Section 1129(a) of the Bankruptcy Code are satisfied, and if, with respect to each Impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to such Class. Confirmation under Section 1129(b) of the Bankruptcy Code requires that at least one Impaired Class of Claims accepts the Plan, excluding any acceptance of the Plan by an "insider" (as that term is defined in Section 101 of the Bankruptcy Code).

(a) <u>No Unfair Discrimination</u>   A Chapter 11 plan does not "discriminate unfairly" with respect to a nonaccepting Class if the value of the cash and/or securities to be distributed to the nonaccepting Class is equal or otherwise fair when compared to the value of distributions to other Classes whose legal rights are the same as those of the nonaccepting Class. The Plan Proponent believes that the Plan would not discriminate unfairly against any nonaccepting Class of Claims or Interests.

(b) <u>Fair and Equitable Test</u>   The "fair and equitable" test of Section 1129(b) of the Bankruptcy Code requires absolute priority in the payment of claims and interests with respect to any nonaccepting Class or Classes. The "fair and equitable" test established by the Bankruptcy Code is different for secured claims, unsecured claims and interests, and includes the following treatment:

(i) <u>Secured Claims</u>   A plan is fair and equitable with respect to a nonaccepting class of secured claims if (aa) the holder of each claim in such class will retain its lien or liens and receive deferred cash payments totaling the allowed amount of its claim, of a value, as of the effective date of the plan, equal to the value of such holder's interest in the collateral, (bb) the holder of each claim in such class will receive the proceeds from the sale of such collateral or (cc) the holder of each claim in such class will realize the indubitable equivalent of its allowed secured claim. As all Holders of Allowed Secured Claims will either be (i) Unimpaired, (ii) retain their respective Lien and receive Distributions totaling the Allowed amount of their respective Allowed Claim, or (iii) realize the indubitable equivalent of their Allowed Claim, the Plan Proponent believes the Plan is fair and equitable with respect to Holders of Allowed Secured Claims.

(ii) <u>Unsecured Claims</u>   A plan is fair and equitable with respect to a nonaccepting class of unsecured claims if (aa) the holder of each claim in such class will receive or retain under the plan property of a value, as of the effective

date of the plan, equal to the allowed amount of its claim, or (bb) holders of claims or interests that are junior to the claims of such creditors will not receive or retain any property under the plan on account of such junior claim or interest. Holders of Allowed General Unsecured Claims are Impaired under the Plan. Further, the Plan anticipates providing Holders of Allowed General Unsecured Claims with property of a value that is less than the Allowed amount of such Claims. However, as Interests shall not receive or retain any property under the Plan, the Plan Proponent believes the Plan is fair and equitable with respect to Holders of Allowed General Unsecured Claims.

(iii) <u>Interests</u> A plan is fair and equitable with respect to a nonaccepting class of interests if the plan provides that (aa) each member of such class receives or retains on account of its interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or (bb) holders of interests that are junior to the interests of such class will not receive or retain any property under the plan on account of such junior interests. Holders of Interests shall not receive or retain any property under the Plan. However, as Holders of interests that are junior to the Interests do not exist, the Plan Proponent believes the Plan is fair and equitable with respect to Interests.

Accordingly, based upon the classification made and distributions provided for under the Plan, the Plan Proponent believes the Plan is fair and equitable.

F.    <u>Alternatives to Confirmation and Consummation of the Plan</u>

If the Plan is not confirmed, absent a significant Cash infusion from the Debtor, the Chapter 11 Case would most likely be converted to a liquidation case under Chapter 7 of the Bankruptcy Code. In Chapter 7, a trustee would be appointed to promptly liquidate the assets of the Debtor. The Plan Proponent believes that in liquidation under Chapter 7, before Creditors received any distributions, significant additional administrative expenses involved in the appointment of a trustee and retention of attorneys, accountants, and other professionals to assist such trustee, along with a possible increase in expenses associated with an increase in the number of claims that would be expected, would cause a substantial diminution in the value of the Debtor's Estate. This includes a reduced value of assets being realized due to the liquidation being conducted by a Chapter 7 trustee who is unfamiliar with the Debtor and its assets.

The Plan Proponent's Liquidation Analysis is premised upon a hypothetical liquidation in a Chapter 7 case.

Based on the Liquidation Analysis, the Plan Proponent projects that the recoveries to creditors under the Plan will exceed recoveries to creditors if the Chapter 11 Case were converted to a case under Chapter 7 of the Bankruptcy Code. Thus, the Plan Proponent submits that an orderly liquidation maximizes recoveries to creditors in the Chapter 11 Case and, as such, the Plan's proposed treatment, allowed claims is in the best interests of creditors.

## IV. **BACKGROUND AND THE CHAPTER 11 CASES**

A. Ownership, Assets and Liabilities of the Debtor

It is the Plan proponent's position that the Debtors' sole valuable assets are the Mortgage and Note, the $250,000 on deposit from OJ Resources and Causes of Action against Insiders.

B. Events Leading To Chapter 11 Filing and Relevant Events During the Chapter 11 Cases

2300 filed its Chapter 11 Case after a judgment of possession (the "Judgment") was rendered against it on April 26, 2010 in New York State Court's because of substantial monetary and non-monetary defaults under a real property lease (the "Lease") for premises located in Bronx, New York (the "Premises") to stop evictions proceedings that would have resulted from that Judgment. Randall filed its Chapter 11 Case after the Judgment became final and non-appealable by it. The Bankruptcy Court vacated the automatic stay with respect to the Judgment, the Lease and the Premises and the Debtors have been evicted from the said Premises. However, the Debtors are now appealing the Judgment to appellate courts in New York State – this after they failed in their efforts to have the Judgment vacated by the court that entered it. In addition, any time to assume or reject the Lease under 11 U.S.C. § 365(d)(4) has expired and, as such the Lease is deemed rejected for all purposes – whether or not the Judgment is vacated (which vacator, the Plan Proponent's believe is unlikely). As such, it is the Plan Proponent's position that the Debtors have no interest in the Premises or the Lease and any attempts by them to appeal the Judgment at this stage and over 1-year after the commencement of the Chapter 11 Cases is futile and a waste of Estates' resources.

It is the Plan Proponent's position that the estates are being wasted and the most important asset of the Estates; i.e. the Mortgage and Note remain uncollected. In addition, the other possible assets of the Estates include the $250,000 on deposit from OJ Resources and Causes of Action against Insiders.

It is the Plan Proponent's position that while the Debtors have continued to operate as a debtor-in-possession subject to the supervision of the Bankruptcy Court, they only filed certain operating reports and they also failed to properly disclose their assets to the Bankruptcy Court and other parties-in-interest. In addition, it is the Plan Proponent's position that the Debtors' Chapter 11 Cases are being run for the benefit of Insiders and not the Estates and their creditors and other parties-in-interest. For example, (i) operating reports are not current, (ii) tax returns have not been filed in years, (iii) plans that could not be confirmed were proposed by the Debtors and the Debtors failed to fix major deficiencies therein (even after instructions to do so by the Bankruptcy Court), (iv) the Debtors have refused to return to Bogopa

Service Corp. the $250,000 that may belong to it, requiring Bogopa Service Corp. to commence an adversary proceeding that itself remains unresolved for many months, (v) the Debtors have undertaken no effort to collect upon or otherwise sell the Mortgage and Note and (vi) while they filed an objection to OJ Resources' claim, they have failed to prosecute that objection. Rather than monetize such valuable assets, the Debtors commenced an adversary proceeding against the Plan Proponent and attempted to prosecute. This adversary proceeding was dismissed with prejudice and the order dismissing it is now final and non-appealable.

### V.    SUMMARY OF THE PLAN

The Plan is annexed hereto as Exhibit A and terms thereof are incorporated herein by reference.

The Plan seeks the appointment of a Responsible Person who shall collect and/or liquidate Property of the Estates and make distributions to Holders of Claims.

### VI.   CONCLUSION

**BASED ON ALL OF THE FACTS AND CIRCUMSTANCES, THE PLAN PROPONENT CURRENTLY BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTORS, THEIR CREDITORS, AND THE ESTATES. MOREOVER, THE PLAN PROPONENT BELIEVES THAT THE PLAN PROVIDES THE BEST AVAILABLE ALTERNATIVE FOR MAXIMIZING THE RECOVERIES THAT CREDITORS MAY RECEIVE FROM THE DEBTORS' ESTATES. THEREFORE, THE PLAN PROPONENT RECOMMENDS THAT ALL CREDITORS THAT ARE ENTITLED TO VOTE ON THE PLAN VOTE TO ACCEPT THE PLAN.**

Dated: June 17, 2011                THE PLAN PROPONENT
       Bronx, New York              Condal Distributors Inc. and Condal Imports Inc.

                                    By: /s/ Nelson Fernandes
                                        CEO, Vice President

                                    Prepared By:

Dated: June 17, 2011                **Joseph A. Altman, P.C.**
       Bronx, New York

                                    By: /s/ Joseph A. Altman
                                    Joseph A. Altman
                                    951 Bruckner Blvd.
                                    Bronx, New York 10459
                                    Phone: 718-328-0422

                                    Counsel for Condal Distributors Inc. and Condal
                                    Imports Inc., the Plan Proponent

EXHIBIT A

[PLAN]

# EXHIBIT B

[DISCLOSURE STATEMENT APPROVAL ORDER[2]]

---

[2] Form to be filed five (5) days before the Disclosure Statement hearing date.

EXHIBIT C

[LIQUIDATION ANALYSIS[3]]

---

[3] To be filed five (5) days before the Disclosure Statement hearing date.