UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **In re:** | x : | |
| **2300 XTRA Wholesalers, Inc. et al.**[1] | : : | **Chapter 11** |
| | : : | **Case No. 10-12280 (ALG)** |
| | : | **and Case No. 10-12915 (ALG)** |
| | x | **Jointly Administered** |

## REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM AND NOTICE OF FILING OF AMENDED PROOFS OF CLAIM

      Condal Distributors Inc. and Condal Imports Inc. (collectively, the "Owner") hereby submit this request for payment of administrative expense claim and provides notice that it has filed amendments to its previously filed proofs of claim (which were designated as claim numbers 7, 8, 9, and 10) against the Debtors, 2300 XTRA Wholesalers, Inc. and Randall Meat Market, Inc.

      The Debtor, 2300 XTRA Wholesalers, Inc. filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on April 29, 2010 and the Debtor, Randall Meat Market, Inc. voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court on May 28, 2010.

      The Owner is the owner of the premises located at 2300 Randall Avenue, Bronx, New York (the "Premises"). The Owner and the Debtor, 2300 XTRA Wholesalers, Inc. entered into a real property lease (as amended, the "Lease") for the Premises in April 1992. Debtor, Randall Meat Market, Inc. has also claimed interest in the Premises and the Lease as a tenant.

      The Owner asserts pre- and post-petition claims against each Debtor in an amount equal to not less than $2,446,349 as follows:[2]

      1)     Pre-petition unpaid rent, use and occupancy evidenced by the Judgment (defined below): $238,329.

      2)     Post-petition unpaid rent, use and occupancy for the months of February, March, April and May 2011: $105,924.[3]

---

[1]      The Debtors are 2300 XTRA Wholesalers, Inc. and Randall Meat Market, Inc.

[2]      On various occasions, the Debtors have argued that they assumed the Lease. Since the Bankruptcy Court vacated the automatic stay as to the Owner, the Lease and the Premises and the Debtors were evicted using state law process and any right, title and interest that any Debtor has or had in the Lease and/or the Premises has terminated. However, taking the Debtors "assumption" argument to the next level, the entire claim can be asserted as an administrative expense claim even though the Lease is now deemed rejected and any interest the Debtors had therein or in the Premises terminated.

[3]      This is asserted as an administrative expense claim.

3)    Costs associated with construction and repair of the Premises, including, bringing the premises to code and replacing the roof of the Premises based upon Heimer Engineering, P.C. report and estimated to be at not less than $1,000,000.[4]

4)    Attorneys' fees and costs associated with preserving and exercising the Owners rights under the Lease:  approximately $105,000.[5]

5)    Fines imposed by the City of New York for failure to clean sidewalk, remove snow and/or debris: $2,050.[6]

6)    Claim under 11 U.S.C. § 502(b)(6) (not including amounts set forth in ¶¶ 1 - 5 above):  $1,025,316.

On April 26, 2010, after trial on the merits, the Civil Court of the City of New York, County of Bronx ("New York Civil Court") issued a final judgment (the "Judgment") in favor of the Owner and as against each Debtor  in the amount of not less than $238,329.00 and mandating the forthwith issuance of a warrant of eviction.  In addition, other amounts due under the Lease (including the Proceeding II Settlement (defined below)) exceed $1 million on account of costs of repairs, maintenance and obtaining a certificate of occupancy for a first class supermarket business and legal fees, costs and expenses incurred by the Owner to date.  The Debtors also refused to pay rent when due commencing February 2011 until they were evicted from the Premises in May 2011.  In addition, the City of New York imposed fines for failing remove snow and debris in and around the Premises.  The Owner also has a right to asset a claim under 11 U.S.C. § 502(b)(6).

The Lease and documents related to the claim are voluminous and will be made available to parties in interest upon written request to the Owner or its counsel at Joseph A. Altman, Esq., 951 Bruckner Blvd., Bronx, New York 10459.  In addition, all such documents are both publicly available and are also in the possession of the Debtors' counsel.

During February 2008, the Debtor, 2300 XTRA Wholesalers, Inc., in violation of the Lease, attempted to sublet and/or assign the Lease to OJ Resources, Inc. ("OJ Resources").  When the Owner objected to the purported unauthorized subletting and/or assignment to OJ Resources, in 2008, the Debtors commenced a New York State Court proceeding against the Owner (the "Proceeding I") seeking a declaration that the Lease could be sublet and/or assigned to OJ Resources without complying with the applicable provisions of the Lease.  The Supreme Court of the State New York - County of Bronx ("New York Supreme Court"), on two occasions, denied the Debtors' applications seeking a declaration that the Lease could be sublet and/or assigned to OJ Resources.  Among other things, the New York Supreme Court ruled in favor of the Owner because the plaintiff was unable to demonstrate adequate assurance of future performance and also failed to provide OJ Resources' financials.

Notwithstanding, in breach of the Lease and in violation of the New York Supreme Court's orders, the possession and management of the Premises was turned over to OJ Resources pursuant to the terms of a Management Agreement made and entered as of March 14, 2008.  In

---

[4]    In the Proceeding II Settlement (defined below), the Debtors agreed to perform such work as provided in the report of Heimer Engineering, P.C., including retaining Michael Neito of L&M Company to replace the roof.

[5]    This is asserted as an administrative expense claim.

[6]    Of this amount, $1,750 is asserted as an administrative expense claim.

addition to turning over possession and management of the Premises to OJ Resources, the lessee also defaulted under various other terms and provisions of the Lease. In connection therewith, on May 23, 2008, the Owner, in compliance with the Lease and applicable law, served a "Five Day Notice of Default", which outlined the numerous monetary and non-monetary defaults under the Lease (the "First Termination Notice"). In response to the First Termination Notice, on or about May 31, 2008, the Debtor commenced a "Yellowstone proceeding" against the Owner in New York Supreme Court (the "Proceeding II").

On February 24, 2009, the parties entered into a settlement agreement in Proceeding II (the "Proceeding II Settlement"). The Proceeding II Settlement became part of the Lease and, among other things, it required the Debtors to: (a) evict OJ Resources from the Premises; (b) obtain a certificate of occupancy for the intended use of the Premises as a first class supermarket; (c) replace, repair and maintain the roof of the Premises; (d) pay rent when due and (e) cure other defaults under the Lease. In addition, as part of the Proceeding II Settlement, the Debtors agreed to discontinue Proceeding I with prejudice.

Subsequent to the execution of the Proceeding II Settlement, the Debtors defaulted under the terms of the Lease (and Proceeding II Settlement), including failing to (a) perform any of the obligations under, and in accordance with, the Proceeding II Settlement and (b) pay rent when due. In connection with these monetary and non-monetary defaults, on August 12, 2009, the Owner, in compliance with the Lease and applicable law, served a "Ten Day Notice of Termination" (the "Second Termination Notice"), which outlined the various defaults under the Lease (and the Proceeding II Settlement).

In accordance with the terms of the Second Termination Notice, the Lease terminated on September 10, 2009. The Debtor, 2300 XTRA Wholesalers, Inc., while not in physical possession, refused to vacate the Premises and on September 11, 2009, the Owner was forced to commence the Landlord/Tenant Proceeding, which is a holdover proceeding, in the New York Civil Court against the Debtors. The Debtors initially defaulted. This default was vacated and the Debtors filed an answer and after trial on the merits, on April 26, 2010, the Judgment of Possession was issued in favor of the Owner mandating the forthwith issuance of a warrant of eviction and imposing monetary damages in favor of the Owner in the sum of not less $238,329.00.

The claim is, and the amounts due to the Owner are, evidenced by, among other documents, the Lease (including the Proceeding II Settlement and documents referenced therein), the Heimer Engineering, P.C. report and the violations issued by the City of New York.

The Judgment portion of this claim is also asserted as a secured claim against all pre-petition property (including the $1,700,000 mortgage and cash in bank) of the Debtors.

Filing of this claim is not and should not be construed to be: (a) a waiver or release of the Owner's rights against any other entity or person liable for all or part of any claim described herein; (b) a waiver of the right to seek to have the reference withdrawn with respect to the subject matter of the claim, any objection or other proceedings commenced with respect thereto, or any other proceedings commenced in this case against or otherwise involving the Owner; (c) a waiver of any right to the subordination, in favor of the Owner; (d) a waiver of any equitable remedy that the Owner may have on account of any claim described herein or otherwise; (e) an election of remedies that waives or otherwise affects any other remedy of the Owner; or (f) a waiver or release of rights, remedies, claims and/or causes of action of the Owner.

3

The Owner reserves the right to amend, modify, or supplement this claim, including without limitation, its rights: (a) to specify (and quantify) costs, expenses, and other charges or claims incurred by or owed to the Owner; (b) to file any separate or additional proof(s) of claim with respect to the claim set forth herein or otherwise (which proof(s) of claim, if so filed, shall not be deemed to supersede this claim); (c) to amend, modify or supplement this claim in any respect, including with respect to the filing of an additional or amended proof of claim for the purpose of fixing and liquidating any contingent or unliquidated claim set forth herein; (d) to file additional proofs of claim in respect of additional claims or for any other reason, including, but not limited, to any and all rights, remedies, claims and/or causes of actions arising out of or related to the Lease or otherwise; and (f) against third parties, including without limitation, any affiliates of the Debtors.

In filing this claim, the Owner does not submit itself to the jurisdiction of the Bankruptcy Court for any purpose, and does not consent to the jurisdiction of the Bankruptcy Court to adjudicate any other matter relating to the Lease and the Premises.